**STATE of Tennessee, Plaintiff/Appellee,**

v.

**Benjamin HUDDLESTON, Defendant/Appellant.**

No. 02S01–9410–CC–00069.

Supreme Court of Tennessee, at Jackson.

June 17, 1996.

Tom Crider, District Public Defender, Twenty–Eighth Judicial District, Trenton, for Appellant.

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Gordon W. Smith, Associate Solicitor General, Nashville, Clayburn Peeples, District Attorney General, Trenton, for Appellee.

## OPINION

ANDERSON, Justice.

This case presents two issues for our determination: 1) whether the defendant's constitutional right to counsel was violated by police questioning that occurred three days after the defendant refused to sign a "waiver of rights" form; and 2) whether the violation of defendant's rights under either Tenn. R.Crim.P. 5(a) or the Fourth Amendment requires suppression of his confession given after he had been detained for more than seventy-two hours, before the State sought a judicial determination of probable cause following a warrantless arrest.

Because we conclude that the defendant's refusal to sign a "waiver of rights" form did not constitute an invocation of his Fifth Amendment right to counsel, his right to counsel was not violated. However, we have determined, and the State concedes, that the defendant's rights under both Tenn. R.Crim.P. 5(a) and the Fourth Amendment to the federal constitution were violated by the State's failure to seek a prompt judicial determination of probable cause. The violation of Tenn.R.Crim.P. 5(a) does not require that the confession be suppressed since it was voluntarily given under the totality of the circumstances. Suppression of the confession is required, however, in this case, as a result of the Fourth Amendment violation. Accordingly, the Court of Criminal Appeals' judgment is reversed and the cause remanded for a new trial in which the defendant's confession will not be admissible.

## BACKGROUND

The defendant, Benjamin Huddleston, was arrested without a warrant in the early afternoon of Friday, January 11, 1991, for his suspected involvement in an armed robbery of a convenience store in Humboldt the previous month. Huddleston was immediately transported to the Humboldt City jail where he was informed of his *Miranda* rights and questioned about the Humboldt robbery and a similar robbery that had occurred in Trenton, Tennessee. Although he refused to sign a form waiving his *Miranda* rights, Huddleston answered some questions about the robberies, denying his knowledge and involvement in them.

Huddleston was detained in the Humboldt City jail over the weekend. He was not personally taken before a magistrate during this period, nor did the State seek a judicial determination of probable cause for the warrantless arrest.

In the afternoon of Monday, January 14, Huddleston was given fresh *Miranda* warnings and again questioned by Detective Baker about the robberies in Humboldt and Trenton. This time, he signed the "waiver of rights" form, and also executed a statement admitting to both the crimes. The next day, Tuesday January 15, more than seventy-two hours after Huddleston's arrest, Detective Baker, relying solely upon the confession, obtained a warrant based on a judicial determination of probable cause. Thereafter, Huddleston was indicted for aggravated robbery.

Prior to trial, Huddleston moved to suppress, arguing that the confession was inadmissible because it was obtained as a result of the State's failure to take him before a magistrate without unnecessary delay as required by both Tenn.R.Crim.P. 5(a) and the Fourth Amendment to the federal constitution as construed by the United States Supreme Court's decision in *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

When asked on cross-examination at the suppression hearing why Huddleston had been held in jail over the weekend, Detective Baker replied, "I was to continue the investi-

gation and develop additional evidence, and there was a hold placed on him by the Trenton Police Department for investigative purposes also." Detective Baker also admitted that he believed that some additional investigation was necessary before he could establish probable cause and secure a warrant for the defendant's arrest.

On redirect examination, the State attempted to prove that even though the confession had been the sole basis for the warrant application, the police in fact had, at the time of the arrest, enough evidence through independent sources to establish probable cause to arrest Huddleston.[1]

At the conclusion of the suppression hearing, the trial court ruled that the State had violated Rule 5(a), but refused to suppress Huddleston's confession, finding that it was voluntary under the totality of the circumstances. Huddleston was later convicted of aggravated robbery, and the conviction was affirmed on appeal by the Court of Criminal Appeals. We granted Huddleston's application for permission to appeal to address these important questions of criminal procedure.

### I. RIGHT TO COUNSEL

Initially, Huddleston claims that his confession was obtained in violation of his constitutional right to counsel. Specifically, he argues that his initial refusal to sign the "waiver of rights" form constituted an invocation of his right to counsel which precluded further police questioning. Because his confession resulted from subsequent police questioning in violation of his right to counsel, Huddleston argues it should have been suppressed.

■ The Sixth Amendment right to counsel does not attach until the adversarial judicial process has begun. *Michigan v. Jackson*, 475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631 (1986); *State v. Stephenson*, 878 S.W.2d 530, 547 (Tenn.1994). In Tennessee, the adversarial judicial process is initiated at the time of the filing of the

formal charge, such as an arrest warrant, indictment, presentment, or preliminary hearing in cases where a warrant was not obtained prior to the arrest. *State v. Mitchell*, 593 S.W.2d 280, 286 (Tenn.1980); *State v. Butler*, 795 S.W.2d 680, 685 (Tenn.Crim.App. 1990). At the time he gave his statement, Huddleston had not been formally charged. Thus, his right to counsel under the Sixth Amendment had not attached and clearly was not violated in this case.

■ In contrast, the right to counsel encompassed within the right against self-incrimination protected by the Fifth Amendment to the United States Constitution is triggered whenever a suspect requests that counsel be present during police-initiated custodial interrogation. When a suspect invokes that right to counsel, police must cease questioning until counsel is present. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *State v. Stephenson*, 878 S.W.2d at 530.

■ Huddleston claims that his refusal to sign the waiver of rights form constituted an invocation of his Fifth Amendment right to counsel which precluded further questioning outside the presence of his attorney. Because his confession was given following additional police questioning outside the presence of his attorney, Huddleston argues that his confession must be suppressed.

In *Miranda*, the Supreme Court did not adopt a rigid formula for invocation of the Fifth Amendment right to counsel. Recently in *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), however, the Court stated that "[i]nvocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id.*, —— U.S. at ——, 114 S.Ct. at 2355 (internal quotations omitted). "Although a suspect need not speak with the discrimination of an Oxford

---

1. According to testimony from Detective Baker, Huddleston had been seen by a police officer in the vicinity of the robbery on the morning it occurred, headed in the same direction as the

robber. When stopped and questioned by the officer, Huddleston had given a false name. In addition, Huddleston's car matched the description of the car involved in the Trenton robbery.

don," the Court emphasized that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable officer would understand the statement to be a request for an attorney." *Id.* If the suspect fails to make such an unambiguous statement, police need not cease questioning.

Applying that standard to the facts in this case, it is clear that Huddleston never made an unambiguous request for counsel. In refusing to sign the waiver of rights form, Huddleston said, "I ain't signing nothing." Certainly, no reasonable police officer in the circumstances would understand that as a request for an attorney. *See also North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (holding that the accused waived his right to counsel despite his refusal to sign a waiver of rights form). Accordingly, Huddleston's Fifth Amendment right to counsel claim is without merit.

## II. RULE 5(a) VIOLATION

We must next consider Huddleston's contention that his confession should have been suppressed because the State violated Tenn.R.Crim.P. 5(a) by detaining him for more than seventy-two hours following a warrantless arrest without obtaining a judicial determination of probable cause. Because of the coercive and intimidating nature of police detention, Huddleston urges this Court to adopt a per se rule requiring exclusion of all statements given during a period of "unnecessary delay" in violation of Rule 5(a).

While the State agrees that the evidence supports the lower courts' finding that Huddleston's detention violated Rule 5(a), it contends that the lower courts correctly held that the violation does not require suppression of Huddleston's statement because it was voluntarily given under the totality of the circumstances. Rule 5(a) provides:

> Any person arrested except upon a capias pursuant to an indictment or presentment shall be taken *without unnecessary delay* before the nearest appropriate magistrate of the county from which the warrant for arrest issued, or the county in which the alleged offense occurred if the arrest was made without a warrant unless

a citation is issued pursuant to Rule 3.5. If a person arrested without a warrant is brought before a magistrate, an affidavit of complaint shall be filed forthwith. When an arrested person appears initially before a magistrate, the magistrate shall proceed in accordance with this rule.

(Emphasis added.)

Without question, incarceration for any period of time is inherently coercive. The custodial environment has been described as carrying a "badge of intimidation [though] not physical [which is] equally destructive of human dignity." *Miranda v. Arizona,* 384 U.S. at 457, 86 S.Ct. at 1619. Indeed, the techniques used in custodial interrogation are often geared to producing in the accused a compulsion to confess. *See Id.* 384 U.S. at 449–56, 86 S.Ct. at 1615–19. When a suspect is detained without being taken before a neutral person who explains the process, issues warnings, and assures that constitutional rights are honored, the intimidating environment is no doubt exacerbated. Nevertheless, most courts have not adopted a per se rule of exclusion, but instead require exclusion of a confession given during a period of unnecessary delay only if an examination of the totality of the circumstances reveals that the statement was not voluntarily given.

For example, in *State v. Readus,* 764 S.W.2d 770 (Tenn.Crim.App.1988), the Court of Criminal Appeals discussed the effect of a violation of Rule 5(a) on the admissibility of a confession obtained during the period of "unnecessary delay." Rejecting the trial court's ruling that any confession obtained within the period of "unnecessary delay" must be excluded, the *Readus* court instead held that the admissibility of such a confession is to be determined by the traditional voluntariness test. *See also State v. Middlebrooks,* 840 S.W.2d 317, 327–28 (Tenn.1992); *State v. Kyger,* 787 S.W.2d 13, 25 (Tenn.Crim.App.1989).

In so holding, the *Readus* court specifically rejected a rule that would have required suppression of any confession obtained from an arrestee during a period of "unnecessary delay." While recognizing that a violation of Rule 5(a) could result in the suppression of a

confession if the violation was a factor in the statement's involuntariness, the court in *Readus* concluded that "the better reasoned cases interpreting 'unreasonable delay' in this context say that it is one factor to be taken into account in evaluating the voluntariness of a confession; and if the totality of the surrounding circumstances indicates that a confession was voluntarily given, it shall not be excluded from evidence solely because of a delay in carrying the confessor before a magistrate." *Id,* 764 S.W.2d at 774.

In adopting the voluntariness test, the *Readus* court cited with approval *People v. Cipriano,* 431 Mich. 315, 429 N.W.2d 781 (1988), a case in which the Michigan Supreme Court set forth the following non-exclusive factors for determining the voluntariness of a confession:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; *whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession;* whether the accused was injured intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

*Id.,* 429 N.W.2d at 790 (emphasis added). The Michigan court stressed that the focus on unnecessary delay should not be solely on the length of the delay, but rather on the circumstances of the delay and their effect on the accused.

Applying those factors to the circumstances in this case, the Court of Criminal Appeals stated as follows:

> The record of the suppression hearing reflects that the defendant, as a parolee, had previous experience with the police and obviously previous experience with incarceration. He was advised of his *Miranda* rights shortly after his arrest on Friday

and, again, before his questioning on Monday. He acknowledged that he understood his rights and he did not refuse to answer the questions at either session. There was no evidence presented about the defendant's intelligence or mental and physical condition which would raise a question about the voluntariness of the statement. Likewise, there was no evidence indicating any physical or mental abuse, actual or threatened, or of any deprivation of necessities. To the contrary, the evidence showed that he was not coerced or threatened by the police in any way ... [U]nder the totality of the circumstances in this case, we cannot conclude that the unnecessary delay, even though purposeful, rendered the defendant's signed statement to have been given involuntarily.

We agree with the Court of Criminal Appeals that Huddleston's statement was voluntarily given under the totality of the circumstances and, therefore, need not be suppressed, despite the Rule 5(a) violation.

### III. FOURTH AMENDMENT VIOLATION

Having concluded that suppression of the confession is not required as a result of the Rule 5(a) violation, we must determine whether the Fourth Amendment violation requires suppression of the confession.

In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the United States Supreme Court determined that the Fourth Amendment mandates a prompt judicial determination of probable cause as a prerequisite to any extended restraint of liberty after a warrantless arrest. *Id.* at 125, 95 S.Ct. at 869. The Court in *Gerstein* did not define "prompt" nor specify a time within which the determination of probable cause had to occur.

Recently, however, in *McLaughlin, supra,* the Court clarified its holding in *Gerstein,* by stating that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *Id.,* 500 U.S. at 56, 111 S.Ct. at 1670, 114 L.Ed.2d at 63.

This is not to say that the probable cause determination in a particular case passes

constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake....

■ If the probable cause determination does not occur within forty-eight hours, "the burden shifts to the government to demonstrate the existence of a *bona fide* emergency or other extraordinary circumstance." *Id.,* 500 U.S. at 57, 111 S.Ct. at 1670, 114 L.Ed.2d at 63. Although the Court acknowledged that states are free to consolidate probable-cause hearings with other pretrial proceedings,[2] such as bail determinations, it cautioned that neither intervening weekends nor the time required to consolidate pretrial proceedings qualifies as an extraordinary circumstance. *Id.,* 500 U.S. at 57, 111 S.Ct. at 1670, 114 L.Ed.2d at 63. Indeed, "a jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest." *Id.*

Huddleston argues that under *McLaughlin,* his Fourth Amendments rights were violated in this case as a result of the more than seventy-two hour detention which preceded the initial judicial determination of probable cause. The State concedes that a Fourth Amendment violation occurred, but argues that suppression of the confession is not the required remedy.

■ To date, the United States Supreme Court has not resolved the question of whether the exclusionary rule applies in the context of a *McLaughlin* Fourth Amendment violation. *Powell v. Nevada,* 511 U.S. 79, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994). Although

noting two arguably analogous rules pointing in opposite directions,[3] the *Powell* Court declined to rule on the issue, stating instead that it "remains an unresolved question." *Id.,* 511 U.S. at ——, 114 S.Ct. at 1284, n. *.

Accordingly, we must first determine whether the exclusionary rule applies at all in the context of a *McLaughlin* Fourth Amendment violation. To that end, it is essential that we consider the history and purpose of the exclusionary rule as it relates to the Fourth Amendment. The exclusionary rule was developed as a remedy for the violation of Fourth Amendment strictures in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), in which the court held that evidence seized in violation of the Fourth Amendment must be excluded from the government's case. Recognizing that "[n]othing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence," in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the exclusionary rule was also applied to suppress evidence seized illegally by state governments.

For a time following the *Mapp* decision, violation of a defendant's Fourth Amendment rights rendered inadmissible all evidence obtained by means of the violation. George C. Thomas III, *The Poisoned Fruit of Pretrial Detention,* 61 N.Y.U.L.Rev. 413, 430 (1986) (Hereafter "61 N.Y.U.L.Rev. at ——."). This simplistic per se rule of exclusion was short-lived, however, perhaps because the rule, by its nature, barred only probative, reliable evidence. *United States v. Leon,* 468 U.S. 897, 907, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) (characterizing evidence subject to suppression in Fourth Amendment cases as "inherently trustworthy tangible evidence"). The Court has since limited the

---

**2.** In most counties in Tennessee, the initial appearance proceeding is comprised of both a probable cause determination and the fixing of pretrial bail. *See* David Raybin, *Tennessee Criminal Practice and Procedure,* § 3.2; *see also* Tenn. Atty.Gen. Op. No. 91–84, at p. 3 (September 20, 1991).

**3.** Although violation of the Fourth Amendment's warrant requirement for a search will result in

suppression of evidence obtained despite an after-the-fact judicial determination of probable cause, violation of the Fourth Amendment's rule against warrantless arrests in a dwelling generally does not lead to suppression of a post-arrest confession. *See Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970); *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).

exclusionary rule,[4] and considers it necessary to remedy a Fourth Amendment violation only if its application is likely to achieve substantial deterrence of official wrongdoing, and the cost of applying the rule—exclusion of reliable evidence—does not outweigh the benefits achieved by its application. *United States v. Leon,* 468 U.S. at 915–21, 104 S.Ct. at 3416–20, 61 N.Y.U.L.Rev. at 430.

Utilizing that cost-benefit analytical framework, the Court has rigidly applied the exclusionary rule in cases involving warrantless arrests made without probable cause,[5] but has refused to apply the rule to arrests or searches made in good faith reliance on a facially valid statute or a judicial officer's determination of probable cause which are later found to be in error.[6]

■ Applying the cost-benefit analysis discussed above, we conclude that the exclusionary rule should apply when a police officer fails to bring an arrestee before a magistrate within the time allowed by *McLaughlin.* Ignoring the requirements of *McLaughlin* is functionally the same as making warrantless searches or arrests when a warrant is required. In both situations, law enforcement officials act without necessary judicial guidance or objective good faith. The cost of applying the exclusionary sanction to a viola-

tion of *McLaughlin* is that evidence obtained as a result of the illegal detention will be suppressed. The benefit is the same as that gained from the application of the exclusionary rule to certain warrantless arrests. It will deter law enforcement officials from ignoring the Fourth Amendment mandate of a judicial determination of probable cause. 61 N.Y.U.L.Rev. at 435. Violations of *McLaughlin* can be easily avoided, and applying the exclusionary rule to evidence obtained as a result of the illegal detention will deter further violations.

Having determined that the exclusionary rule generally applies in the context of a *McLaughlin* violation, we must next delineate the specific analysis that governs its application in individual cases. Several jurisdictions employ the traditional voluntariness test discussed above in conjunction with the Rule 5(a) violation. *See e.g., State v. Tucker,* 137 N.J. 259, 645 A.2d 111, 117–19 (1994); *United States v. Perez–Bustamante,* 963 F.2d 48, 51–54 (5th Cir.1992). The State in this case urges us to adopt that analysis as well. We decline.

■ The voluntariness test is not the proper vehicle for analyzing whether a Fourth Amendment violation requires suppression of a statement. The voluntariness

---

**4.** *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (defendants may claim benefits of exclusionary rule only if their personal Fourth Amendment rights have been violated); *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (illegally seized evidence is admissible to impeach the testimony of the person whose rights were violated); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (evidence seized in violation of the Fourth Amendment may be used in grand jury hearings); *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (evidence seized in violation of the Fourth Amendment may be used to recover a tax delinquency); *I.N.S. v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (evidence seized in violation of the Fourth Amendment may be used in deportation hearings); *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (federal habeas corpus relief cannot be granted if a state defendant's Fourth Amendment claim has been the subject of a full and fair adjudication in state court); *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (exclusionary rule inapplicable to evidence uncovered in a

search incident to arrest under a presumptively valid statute that is later declared unconstitutional); *United States v. Leon, supra* (exclusionary rule does not apply when a police officer has relied in good faith on a warrant that later turns out to be deficient under the Fourth Amendment).

**5.** *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *cf. Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (inadequate grounds for temporary investigative stop); *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (same).

**6.** *Michigan v. DeFillippo, supra* (exclusionary rule inapplicable to evidence uncovered in a search incident to arrest under a presumptively valid statute that is later declared unconstitutional); *United States v. Leon, supra* (exclusionary rule does not apply when a police officer has relied in good faith on a warrant that later turns out to be deficient under the Fourth Amendment).

test is designed to protect the Fifth Amendment right against self-incrimination by excluding a statement that is obtained as a result of coercion by law enforcement officials. *See State v. Stephenson,* 878 S.W.2d at 544–45. It does not address the interests implicated by a Fourth Amendment violation. *See, e.g., People v. Cipriano,* 429 N.W.2d at 785, n. 9 (expressly recognizing that the prompt arraignment requirement contained within state procedural rules is not the same as the Fourth Amendment requirement of a prompt judicial determination of probable cause following a warrantless arrest.); *see also State v. Readus, supra* (adopting the *Cipriano* holding).

In contrast, the exclusionary rule was designed to protect Fourth Amendment guarantees by deterring lawless searches, seizures, and arrests. The U.S. Supreme Court has explained the interaction between the Fourth and Fifth Amendments as follows.

Although, almost 90 years ago, the Court observed that the Fifth Amendment is in intimate relation with the Fourth, the *Miranda* warnings thus far have not been regarded as a means either of remedying or deterring violations of Fourth Amendment rights. Frequently, as here, rights under the two Amendments may appear to coalesce since the unreasonable searches and seizures condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment. The exclusionary rule, however, when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth. It is directed at all unlawful searches and seizures, and not merely those that happened to produce incriminating material or testimony as fruits. In short, exclusion of a confession made without *Miranda* warnings might be regarded as necessary to effectuate the Fifth Amendment, but would not be sufficient fully to protect the Fourth. *Miranda* warnings, and the exclusion of a confession made without them, do not alone, sufficiently deter a Fourth Amendment violation.

Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

*Brown v. Illinois,* 422 U.S. 590, 601, 95 S.Ct. 2254, 2260–61, 45 L.Ed.2d 416 (1975) (internal quotations and citations omitted).

▮ Accordingly, we agree with those jurisdictions that have rejected the voluntariness test and have applied instead a "fruit of the poisonous tree" analysis in determining whether or not a statement obtained during an illegal detention must be suppressed. *Williams v. State,* 264 Ind. 664, 348 N.E.2d 623, 629 (1976); *Black v. State,* 871 P.2d 35 (Okl.Crim.1994); 61 N.Y.U.L.Rev. at 458. Under the "fruit of the poisonous tree" analysis, the focus is on whether the evidence was obtained by exploitation of the Fourth Amendment illegality. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). As the U.S. Supreme Court has recognized, when considering whether a statement obtained in violation of the Fourth Amendment must be suppressed, the question is "whether [the statement] 'was *sufficiently* an act of free will to purge the primary taint of the unlawful invasion.'" *Brown v. Illinois,* 422 U.S. at 598, 95 S.Ct. at 2259 (quoting *Wong Sun v. United States,* 371 U.S. at 486, 83 S.Ct. at 416) (emphasis added).

▮ Although the answer to that question is dependent upon the particular facts of each case, the Court suggested four factors to aid the determination: (1) the presence or absence of *Miranda* warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and finally, of particular significance, (4) the purpose and flagrancy of

the official misconduct. The burden of proving, by a preponderance of the evidence, the admissibility of the challenged evidence rests on the prosecution. *Brown v. Illinois*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62; *see also Williams v. State*, 348 N.E.2d at 628.

Unlike illegal arrest cases, the Fourth Amendment violation in *McLaughlin* cases is the unreasonable detention of an arrestee without a judicial determination of probable cause.[7] Initially, detention is not illegal, but later ripens into a constitutional violation. Although some modification of the precise application of the factors is necessary to accommodate the differences between an illegal arrest and an illegal detention, we conclude that the above-cited factors, as explained in greater detail below, are relevant and appropriate in determining whether suppression of evidence is appropriate in illegal detention cases. *See Williams v. State*, 348 N.E.2d at 629, 61 N.Y.U.L.Rev. at 458–59.

In this case, the defendant was held for more than seventy-two hours without a judicial determination of probable cause, thus the burden shifted to the State "to demonstrate the existence of a *bona fide* emergency or other extraordinary circumstance." The State offered no evidence to meet that burden. Thus a Fourth Amendment violation occurred. Suppression of a statement obtained as a result of that violation is required unless the confession is "sufficiently an act of free will to purge the primary taint of the illegal arrest." Utilizing the four factors identified above, we conclude that suppression is required in this case.

Huddleston was given *Miranda* warnings prior to giving the statement to police. Although that factor is not determinative, it indicates that the defendant was aware of his Fifth Amendment rights against self-incrimination which is a threshold factor weighing, to some extent, in favor of attenuation.

Second, we consider the temporal proximity of the arrest and the confession. In the context of a *McLaughlin* violation, the inquiry focuses on the point at which the statement was given during the *illegal* detention. Obviously, if the statement was given prior to the time the detention ripened into a constitutional violation, it is not the product of the illegality and should not be suppressed. Many commentators have argued convincingly that "illegal custody becomes more oppressive as it continues uninterrupted." *See, e.g.,* 1 W. LaFave & J. Israel, *Criminal Procedure*, § 9.4(a), at 744 (1984). Thus, when the detention becomes unlawful under *McLaughlin*, the passage of time actually makes the violation worse. Although the taint of an unlawful arrest may tend to dissipate with time, it is not the arrest that is unlawful in a *McLaughlin* violation, but the detention itself. Once the detention becomes unlawful, the pressure to confess likely increases with each moment of continuing illegal detention. Where, as here, the defendant did not confess until he had been detained by the authorities for approximately seventy-two hours, the temporal proximity factor weighs against a finding of attenuation and in favor of suppression. *See Williams v. State*, 348 N.E.2d at 630, 61 N.Y.U.L.Rev. at 458–59.

Next, we consider whether the presence of intervening circumstances purged the taint of the illegal detention. The leading intervening circumstances case in the context of an illegal arrest is *Wong Sun*. There, the defendant was free on bail but voluntarily returned to the police station to make a statement. Obviously, that intervening circumstance purged the taint of the initial illegality. Continuing custody is inherent to every *McLaughlin* violation; therefore, the intervening circumstance present in *Wong Sun* will never be present in an illegal detention case. One example of an intervening circumstance that could purge the taint of an illegal detention, however, is the arrestee's consultation with an attorney, relative, friend, or priest prior to the time a statement is given. In this case, there is no evidence of an intervening circumstance. Thus, this factor weighs against a finding of attenuation and in favor of suppression.

---

7. The only Fourth Amendment violation pursued by the defendant in this case is the *McLaughlin* violation. Thus, our discussion of whether suppression is required relates to that question alone.

Finally, we consider whether the police illegality, in this case unlawful detention, was purposeful. This factor is particularly appropriate in the context of evaluating whether evidence obtained in violation of the Fourth Amendment should be suppressed, as the primary purpose of the Fourth Amendment exclusionary rule is to deter official misconduct. In this case, the police officer testified that Huddleston was detained so that police could "continue the investigation and develop additional evidence." Obviously, the detention was intentional and was not the product of simple inadvertence or administrative oversight. Inadvertence or administrative oversight are more akin to the *Leon* analysis of objective good faith and would weigh less in favor of suppression in the analysis of this Fourth Amendment violation. Here, however, the detention was purposeful.

Moreover, in *McLaughlin*, the Court specifically characterized as unreasonable, delay "for the purpose of gathering additional evidence to justify the arrest...." *Id.*, 500 U.S. at 56, 111 S.Ct. at 1670, 114 L.Ed.2d at 63. Certainly, that characterization is in keeping with the underlying principles of the Fourth Amendment which prohibits arrests except upon probable cause. Here, Officer Baker admitted that he did not believe he had sufficient evidence without additional investigation to establish probable cause to a judicial officer and secure a warrant for Huddleston's arrest. Although Officer Baker's subjective belief that he did not have enough evidence to obtain a warrant is irrelevant to whether or not probable cause actually existed, *see State v. Duer*, 616 S.W.2d 614, 616 (Tenn.Crim.App.1981), his belief is relevant to determine the flagrancy of the Fourth Amendment violation. Here, Officer Baker proceeded to make a warrantless arrest though he did not believe he had probable cause to do so. Despite his belief that he had already violated the Fourth Amendment probable cause requirement, he intentionally compounded that problem by detaining Huddleston in violation of the Fourth Amendment's requirement of a prompt judicial determination of probable cause. Such a flagrant disregard of constitutional mandates must not be countenanced by the courts.

Consideration of this factor, therefore, weighs heavily in favor of suppression.

Accordingly, after due consideration of the factors discussed above, Huddleston's confession, obtained during an illegal detention in violation of the Fourth Amendment, should have been suppressed.

### CONCLUSION

For the reasons discussed above, the defendant's constitutional right to counsel was not violated in this case. However, we have determined that the defendant's rights under both Tenn.R.Crim.P. 5(a) and the Fourth Amendment to the federal constitution were violated by the State's failure to seek a prompt judicial determination of probable cause. The violation of Tenn.R.Crim.P. 5(a) does not require that the confession be suppressed since it was voluntarily given under the totality of the circumstances. Suppression of the confession is required, however, in this case, as a result of the Fourth Amendment violation. Accordingly, the Court of Criminal Appeals' judgment is reversed and the cause remanded to the trial court for a new trial in which the defendant's confession will not be admissible. Costs of this appeal are taxed to the State of Tennessee, for which execution may issue if necessary.

BIRCH, C.J., and DROWOTA, J., concur.

REID and WHITE, JJ., concur in separate concurring opinion.

REID, Justice, concurring.

I concur in the result reached by the majority that the defendant's confession was not admissible and that the case be remanded for retrial.

I write separately because, in my view, further analysis of the Rule 5(a) issue is necessary.

I agree that violation of Rule 5(a) of the Tennessee Rules of Criminal Procedure does not require the exclusion of a confession in every case. However, even though the majority recognizes that incarceration is inherently coercive and custodial interrogation is often utilized to induce confessions, it apparently gave little effect to that factor in its

examination of the "totality of the circumstances" in this case.

The assessment of the impact of a blatant violation of Rule 5(a) is aided by an examination of the history and purpose of the rule. Before the adoption of Rule 5(a), a section of Tennessee Code Annotated required that persons arrested by "private persons" be taken before a magistrate or an officer "without unnecessary delay." While no similar provision existed for arrests by police officers, another section provided that "[n]o person can be committed to prison for any criminal matter, until examination thereof be first had before some magistrate." *Wynn v. State*, 181 Tenn. 325, 181 S.W.2d 332, 334 (1944) (quoting Tenn.Code Ann. §§ 11544, 11515 (1932)). The purpose of these statutes was to assure the vitality of the presumption of innocence. Thus, one arrested by a citizen or officer without the intervention of a neutral determination of probable cause was required to be taken promptly before a magistrate. The magistrate's role, then as now, was to assure that constitutional rights were protected. Among those rights were the presumption of innocence, the right to bail, the right to counsel, and the right to be free from self-incrimination.

Confessions given during warrantless, unsafeguarded periods of pretrial incarceration were suspect because they were given at a time when a presumptively innocent accused was being held illegally without the benefit of constitutional protections. Thus, in order to determine the admissibility of these confessions, the courts focused on the circumstances of confinement and the treatment of the accused during confinement. In a 1943 unpublished decision, this Court excluded a confession made during a warrantless, custodial interrogation which was described as a "continuous grilling." *See Wynn v. State*, 181 S.W.2d at 333. However, that decision was clarified by the Court the next year in *Wynn v. State*. There, the Court declined to exclude confessions made during a 72 hour warrantless detention finding no proof "of any mistreatment of defendant." *Id.* 181 S.W.2d at 334. Thus, the Court held that it was not the fact of a warrantless detention that yielded the confession inadmissible but rather "the treatment ... during detention." *Id.*; *see also, McGhee v. State*, 183 Tenn. 20, 189 S.W.2d 826, 828 (1945).

This general totality approach was also advanced after the passage of Rule 5(a) in a decision of the Court of Criminal Appeals relied upon by the majority. In *State v. Readus*, 764 S.W.2d 770 (Tenn.Crim.App. 1988), *cert. denied*, (Tenn.1989), the trial court excluded a confession made during a brief period of delay in which the accused was held without a warrant.[1] The Court of Criminal Appeals reversed and held that "if the totality of the surrounding circumstances indicates that a confession was voluntarily given, it shall not be excluded from evidence solely because of delay in carrying the confessor before a magistrate." *Id.* at 774.

The facts which prompted the *Readus* decision are strikingly different from those in the case at bar. Readus was indicted for raping a young girl on her way to school. Within an hour of the rape, he was arrested without a warrant. He was taken to the hospital for the performance of tests. After being explained his *Miranda* rights, he chose to talk and exculpated himself. Within moments, however, Readus told the detective, "I need some help.... I need to talk about it." Less than two hours after the arrest, Readus confessed. A taped confession was given two hours later. Readus was taken before a magistrate approximately eight hours after his warrantless arrest. The Court of Criminal Appeals noted that "a violation of Rule 5(a) could result in the suppression of a confession, if the violation was a factor in its involuntariness," but concluded that the delay of eight hours in the case was not unnecessary, nor was the confession, initiated by

---

1. In *Readus*, the trial court reasoned that the passage of Rule 5(a) without a complementary statute similar to 18 U.S.C. § 3501(c) (clarifying that delay does not per se invalidate a confession) resulted in an adoption of the so-called *McNabb–Mallory* rule in Tennessee. In *McNabb* and *Mallory*, the United States Supreme Court held that confessions produced during periods of unnecessary delay between confinement and appearance must be excluded regardless of voluntariness. *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

Readus, involuntary. *Id.* at 772. The holding in *Readus* was that voluntariness is the critical standard under Rule 5(a) for determining the admissibility of confessions obtained during the violation of that rule, and the coercive nature of extended incarceration is a significant factor in determining voluntariness. *Id.* at 774.

Because pretrial incarceration is inherently coercive and confessions given during periods in which a defendant is being held in violation of Rule 5(a) are inherently suspect, the procedure for determining whether a confession was voluntary is of critical importance. If the challenged confession was given while the defendant was being held in violation of Rule 5(a), the burden is on the State to prove that it was voluntarily made under the totality of circumstances of the case. *See generally, State v. Hall,* 237 Neb. 169, 465 N.W.2d 150 (1991); *State v. Smith,* 301 Or. 681, 725 P.2d 894 (1986); *DeConingh v. State,* 433 So.2d 501 (Fla.1983). In addition to the factors generally relevant to a determination of voluntariness, the proof must address the inherently coercive effect of custodial interrogation, which increases substantially with each additional hour of isolated custody. For the confession to be admissible, the totality of the circumstances must include evidence of some fact or circumstance which would tend to neutralize or overcome the coercive effect of prolonged incarceration.

Since the proof in this case does not include evidence of any factor or circumstance which would tend to neutralize or overcome the coercive effect of incarceration in violation of Rule 5(a), I would hold that the confession should have been suppressed on that ground also.

WHITE, J., concurs.