IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. RODNEY FORD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 95-A-582; 583 Steve R. Dozier, Judge**

---

**No. M1999-01078-CCA-R3-CD - Decided April 27, 2000**

---

Defendant was convicted by a jury of three counts of aggravated robbery. Subsequently, on direct appeal this court held that the search of defendant's home was illegal. We held that all physical evidence gained through the search of the residence as well as defendant's verbal statements when confronted with this evidence should have been suppressed. Additionally, this court remanded the case to the trial court for a determination as to the legality of defendant's subsequent written confession at the police station. On remand, the trial court held the statement was admissible. After thoroughly reviewing the record, we **reverse** the decision of the trial court and **remand** for a new trial, with instructions that the written statement be suppressed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Remanded**

RILEY, J., delivered the opinion of the court, in which GLENN, J. and ACREE, Special J. joined.

Thomas Jay Norman, Nashville, Tennessee, for the appellant, Rodney Ford.

Michael E. Moore, Solicitor General, Clinton J. Morgan, Assistant Attorney General, Victor S. Johnson III., District Attorney General, and Kymberly Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### BACKGROUND

On June 14, 1994, Detective Ricky Roll of the Nashville Metropolitan Police Department obtained an arrest warrant for Grady Morris who was wanted for a series of aggravated robberies committed at area pawn shops. Detectives followed Morris to a residence which they later learned belonged to the defendant; knocked at the front door; and immediately heard "someone running." Several of the detectives went to the back of the house where they encountered the defendant. The defendant was told to lie on the ground and was asked who was in the house. Defendant stated his "baby brother" might be in the house. When asked if Morris was in the house, defendant responded

affirmatively. The detectives then entered the house and arrested Morris. Thereafter, detectives searched the house for other persons and subsequently discovered stolen jewelry lying on a bed. The detectives retrieved the defendant and brought him to the upstairs bedroom where the jewelry was found. Defendant was advised of his rights. Defendant stated "I ain't taking this by myself," and indicated the jewelry was stolen in the "pawn shop robberies."

While defendant was still upstairs, Detective Norris Tarkington again read him his rights and asked if he was willing to talk without an attorney. When defendant agreed, the detective continued to question him, and defendant eventually admitted his participation in one of the "pawn shop robberies." In addition, defendant directed detectives to further evidence linking him to the "pawn shop robberies." Defendant also stated that he knew where there were guns which had been taken in the robberies. Two detectives escorted the defendant to the location where he claimed the guns were hidden, but no guns were recovered.

Before being transferred to the police station, the detectives returned the defendant to his home where he briefly spoke with his mother. Once at the station, the defendant was read his rights and executed a written waiver of those rights. While detectives interviewed Morris, the defendant was left alone and Detective Haney asked him to write out his involvement in the robberies. Defendant wrote a self-titled "confession" in which he implicated himself in the "pawn shop" robberies. He gave a detailed account of his involvement and included specific diagrams of the robberies.

## PROCEDURAL POSTURE

Defendant was convicted by a jury of three counts of aggravated robbery. Subsequently on direct appeal, this court held that the search of defendant's home was illegal. *See* State v. Rodney Ford, C.C.A. No. 01C01-9708-CR-00365, 1999 WL 5437 (Tenn. Crim. App. Jan. 7, 1999).[1] We held that all physical evidence gained through the search of the residence, and all verbal statements made by the defendant at the residence when confronted with this physical evidence, should have been suppressed. Ford, 1999 WL 5437, at *4. Additionally, this court remanded the case to the trial court for a determination as to the legality of defendant's subsequent written confession. Ford , 1999 WL 5437, at *5. In its opinion, this court instructed the trial court to consider the following four factors in determining whether defendant's written statement must be suppressed pursuant to the exclusionary rule: "(1) whether the accused received *Miranda* warnings; (2) the period of time between the search and the confession; (3) the presence of intervening circumstances; and finally, of particular significance (4) the purpose and flagrancy of the official misconduct." Ford, 1999 WL 5437, at *5 (*quoting* Brown v. Illinois, 422 U.S. 590, 603-604 (1975)). On remand, the trial court

held the statement was not affected by the prior illegality; was properly obtained; and was

---

[1] The undersigned judge dissented, believing the seizure to be proper under the exigent circumstances doctrine. The state did not seek permission to appeal.

admissible. This appeal followed.


## STANDARD OF REVIEW

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, this court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). Determining whether the written confession was the "fruit" of the illegal search and improperly-obtained statements at the residence requires us to apply the law to the facts as found by the trial court. This is a question of law which this court reviews *de novo*. *Id.*; State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). When we apply the law to the facts as found by the trial court, we conclude the written confession was the "fruit" of the illegal search and improperly-obtained statements.


## FOUR-PRONG ANALYSIS

The test for determining the admissibility of a confession elicited from an illegal search or seizure is the "fruit of the poisonous tree" analysis, as opposed to the voluntariness test. Brown v. Illinois, 422 U.S. at 591-592; State v. Huddelston, 924 S.W.2d 666, 674 (Tenn. 1996). "Under the 'fruit of the poisonous tree' analysis, the focus is on whether the evidence was obtained by exploitation of the Fourth Amendment illegality." Huddleston, 924 S.W.2d at 674 (*quoting*, Wong Sun v. United States, 371 U.S. 471, 488 (1963)). In making this determination the primary question is "whether [the statement] was sufficiently an act of free will to purge the primary taint of the unlawful invasion." Brown, 422 U.S. at 598 (*quoting*, Wong Sun v. United States, 371 U.S. at 486)); *see also*, State v. Johnson, 980 S.W.2d 414, 424 (Tenn. Crim. App. 1998). The burden of proving the admissibility of the challenged evidence by a preponderance of the evidence rests on the prosecution. Huddleston, 924 S.W.2d at 675.

On remand, this court instructed the trial court to use the analysis applied by both the United States Supreme Court in *Brown* and the Tennessee Supreme Court in *Huddleston*. Thus, on remand the trial court considered the following:

> (1) the presence or absence of *Miranda* warnings; (2) the temporal proximity of the search and the confession; (3) the presence of intervening circumstances; and finally, of particular significance, (4) the purpose and flagrancy of the official misconduct. Huddleston, 924 S.W.2d at 674-675.

Therefore, in our review of the trial court's judgment, we will look to these factors.

## A. *Miranda* Warnings

It is undisputed that defendant received *Miranda* warnings before his initial, verbal statements; before he was questioned by Detective Tarkington; and before he signed a written waiver of his rights and issued the written confession. Thus, this factor weighs in favor of the State. However, *Miranda* warnings alone do not *per se* authorize the admission of the subsequent confession. Brown, 422 U.S. at 603.

## B. Temporal Proximity

Weighing in favor of suppression is the temporal proximity of the search and statements at the residence with the defendant's subsequent written confession. In *Brown* the Supreme Court found that, because the defendant had made one statement he believed to be admissible, the second statement was tainted as well. 422 U.S. at 605. The Court noted that defendant's cooperation with the officers was based on his "anticipation of leniency." *Id.* at 605 n.12. The Court held that such expectations "bolstered the pressures" for defendant to give the second statement, or "at least vitiated any incentive on his part to avoid self-incrimination." *Id.*

The defendant's written confession was given only four to five hours after the initial "illegality." Defendant was in custody for the entire period; continued to make broad incriminating statements; and turned over additional evidence. Furthermore, the defendant's police station confession contained essentially the same information he had given in the verbal statements which this court previously ordered suppressed. Thus, there is no indication that adequate time elapsed to allow the defendant to formulate "free will" sufficient to remove the taint caused by the illegality. This factor weighs heavily in favor of suppression.

## C. Intervening Circumstances

The state argues that the defendant's conversation with his mother and the time spent alone at the police station are both intervening circumstances sufficient to allow the formation of "free will." The State argues that even though defendant was detained, consultation with his mother prior to the statement weighs in its favor. *See* Huddleston, 924 S.W.2d 675. However, Detective Haney testified that defendant's conversation with his mother was "very brief." The state has failed to carry its burden of showing sufficient intervening circumstances to undermine the inference that the written police station confession was tainted by the Fourth Amendment violation. This factor weighs heavily in favor of suppression.

## D. Flagrancy of Misconduct

In the original opinion filed by this court, the decision to suppress was not unanimous. Relying on Welch v. Wisconsin, 466 U.S. 740 (1984), the dissent found that the search was proper based upon exigent circumstances; the search and seizure of the physical evidence was justified

under the "protective sweep doctrine;" and the evidence was found in plain view and, thus, was admissible. *See* <u>Ford</u>, 1999 WL 5437, at *6-7.[2]

While the lack of unanimity as to the suppression of the search does not foreclose the issue of whether or not there was flagrant misconduct, it does weigh in favor of finding no such flagrancy existed. The police were unaware the defendant lived at the house in question and were seeking to arrest a person thought to be a dangerous felon. Furthermore, the detectives attempted to extricate the suspect without entering the house, but he refused to exit.

Relying on these facts, we conclude there was no flagrant misconduct. Thus, this factor weighs in favor of the State.


## NATURE OF THE ILLEGALITY

This case is factually unique in that the defendant's statements were the fruit of an illegal <u>search</u> versus an illegal <u>arrest</u> or illegal <u>detention</u>. Thus, even though we remanded to the trial court to analyze this case under the four-prong *Brown* and *Huddleston* holdings, we recognize that this approach has been criticized "when the 'poisonous tree' is an illegal search." *See generally,* 5 Lafave, **Search and Seizure** § 11.4(c) (3d ed.1996).

While we are wary of jumping into the quagmire of a complicated Fourth Amendment analysis, and certainly stop short of adopting a new test, we do note the distinct legal difference between a confession which results from an illegal arrest and one which results from an illegal search. This distinction is especially relevant in cases where the illegal search produces evidence which is presented to the defendant in an attempt to gain a confession. The defendant's realization that the "cat is out of the bag" clearly is significant in encouraging the defendant to speak. 5 Lafave, § 11.4(c) at 273.

The giving of *Miranda* warnings does not break the casual chain when a defendant is presented with illegally-obtained incriminating evidence which he believes to be admissible, and confesses shortly thereafter. *See* 5 Lafave, § 11.4(c) at 273-274. The more contemporary doctrine appears to establish that giving the defendant *Miranda* warnings will not break the causal chain between an illegal search and a subsequent confession, since they do not advise the defendant whether the evidence he is confronted with was unlawfully obtained. *Id.* at 274.

Similarly, where the taint is a productive illegal search, *Brown's* temporal proximity factor adds little insight into the question of whether defendant's confession is the "fruit" of the initial illegality. *See* 5 Lafave, §11.4(c) at 273. Where incriminating evidence is seized, regardless of the time frame between the illegal search and the subsequent confession, the potential remains for

---

[2] As previously noted, the state did not seek permission to appeal to the Tennessee Supreme Court.

authorities to elicit a confession through exploitation of the illegality.

## DUAL ILLEGALITY

We further note that the nature of the illegality in this case is extremely unique. This court previously concluded the search was illegal and ordered suppression not only of the physical evidence, but also the defendant's statements at his residence. Thus, a dual illegality preceded the written confession at the police station. The giving of *Miranda* warnings to remove the taint becomes even more attenuated where, as in the present case, the defendant believes he has already given the same information in an admissible confession. *See* United States v. Patino, 830 F.2d 1413, 1419 (7th Cir. 1987). Having been confronted with the illegal evidence and having given improperly-obtained admissions, we are simply unable to conclude that the state has met its burden of establishing that the subsequent written confession was purged of the primary taint of the unlawful activities.

## CONCLUSION

We conclude that the state failed to meet its burden of showing the written confession was a sufficient act of free will to purge the primary taint of the illegality. The written confession was a fruit of the illegal search and improperly-obtained statements made at defendant's residence. Therefore, the judgment of the trial court is **REVERSED**. This case is **REMANDED** for a new trial with specific instructions to suppress defendant's written confession.[3]

---

[3] The state indicated to the trial court that it would be unable to proceed without the written confession. Upon remand, this determination will have to be made by the state. It is not appropriate for this court to order a dismissal.