IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 25, 2009 Session

## STATE OF TENNESSEE v. CHARLES NASH

**Appeal from the Criminal Court for Hamilton County**
**No. 259270    Don W. Poole, Judge**

**No. E2008-00951-CCA-R3-CD - Filed August 12, 2009**

A Hamilton County jury convicted the defendant, Charles Nash, of first degree murder and especially aggravated robbery. The defendant appeals, arguing that the trial court erred by denying his motion to suppress his statement to police. The defendant asserts that he unequivocally invoked his right to counsel before the statement began, thus rendering the statement violative of his Fifth Amendment protection against self-incrimination. Discerning no error, we affirm the trial court, but we remand the case for correction of the judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Daniel J. Ripper (at trial and on appeal) and Mike A. Little (at suppression hearing), Chattanooga, Tennessee, for the appellant, Charles Nash.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Matthew Bryant Haskell, Assistant Attorney General; William H. Cox, III, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The record reflects that in June 2006, the defendant was indicted on two counts of first degree murder (under the alternative theories of premeditated murder and felony murder) and one count of especially aggravated robbery. The indictments alleged that the defendant robbed and killed Ok-Hui Brown, a clerk at a Chattanooga convenience store. The defendant filed two motions to suppress an interview which he gave to police shortly after Ms. Brown's death. The first motion does not appear in the record, but the transcript from the March 5, 2007 hearing on the motion does appear in the record. At that hearing, the defendant argued that he did not fully understand his constitutional rights as explained by police, thus rendering his statement unknowing and involuntary. At the close of the hearing, the trial court denied the defendant's motion. A written order denying the first

motion does not appear in the record.

The trial court subsequently allowed counsel representing the defendant at the first suppression hearing to withdraw. After the trial court appointed new counsel, the defendant filed a second motion to suppress his statement. In this motion, the defendant argued that he unequivocally requested counsel before being questioned by police, thus rendering his subsequent statement violative of his Fifth Amendment protection against self-incrimination. The trial court denied the motion via written order on October 3, 2007. The trial court's order suggests that a hearing on the defendant's motion was held on October 1, 2007; although this court granted the defendant's motion to supplement the appellate record with the transcript from the hearing, no transcript from the October 2007 hearing appears in the record.

After a jury trial, the defendant was found guilty on all counts. The trial court merged the two first degree murder counts and sentenced the defendant to concurrent terms of life in prison for the first degree murder conviction and twenty-five years for the especially aggravated robbery conviction.[1] The defendant subsequently filed a timely notice of appeal.

## Factual Summary

We will limit our factual summary to those events concerning the defendant's stated issue on appeal: whether he unequivocally invoked his right to counsel before being interviewed by police. At the hearing on the defendant's first motion to suppress, Detective Ralph Kenneth Freeman with the Chattanooga Police Department testified that on February 25, 2006, he was investigating both Ms. Brown's death and another robbery and that the defendant's "name came up" in connection with both offenses. The defendant's father told Detective Freeman where the defendant would be found; after Detective Freeman found the defendant, he transported the defendant to the police station. The two men spoke on the way to the station, but they did not talk about either of the pending investigations.

Some thirty to forty-five minutes after the defendant arrived at the police station, Detective Freeman and Detective Joe Shaw interviewed the defendant. The interview began, in pertinent part, as follows:

> [DET. FREEMAN]: Charles, before I ask you any questions[,] you must understand your rights:
> [Reading from the rights waiver form:] *You have the right to remain silent.*

---

[1]Two sets of judgments appear in the record; it appears that one set of judgments was entered on December 18, 2007, the day of the defendant's sentencing hearing, and one set was entered on February 25, 2008, the date of the hearing on the defendant's motion for new trial. The first set of judgments properly reflects the merger of the two murder counts; the second set does not. Additionally, neither set of judgments reflects that the defendant's especially aggravated robbery sentence is to be served concurrently with his first degree murder sentence as ordered by the trial court and reflected in the transcript. Accordingly, the trial court shall enter revised judgments reflecting the proper sentence as imposed by the trial court at the sentencing hearing.

*Anything you say can be used against you in court.*

*You have the right to talk to an* [sic] *lawyer for advice before we ask you any questions and to have him or her with you during questioning.*

*If you cannot afford a lawyer one will be appointed for you before any questioning if you wish.*

*If you decide to answer questions now without a lawyer present you will still have the right to stop answering questions at any time.*

*You also have the right to stop answering questions at any time until you talk to a lawyer.*

Do you understand your rights?  Can you read and write? Answer yes for me if . . . if you understand your rights.

[DEFENDANT]: Yes.

[DET. FREEMAN]: Okay, can you read and write?

[DEFENDANT]: Yes.

[DET. FREEMAN]: What's your education Charles?

[DEFENDANT]: Hmm, two (2) years of college.

[DET. FREEMAN]: Two (2) years of college.  Here's the rights waiver form showing you, just read over that like I just read it and if you want to talk to me just initial every place right there and then sign and date it right there.

(*silence*)

[DET. FREEMAN]: I explained to you also that we were gonna fingerprint you and take your pictures and stuff like that, right? Okay.  And you stated that you would like to do that first? Or do you want to continue with this right now?

[DET. SHAW]: Hey, I want to go to the john first.

[DET. FREEMAN]: Okay.  Hold on just a second, let me see if he's gonna sign that Rights Waiver Form.

[DEFENDANT]: Is it . . . uh . . . it ain't possible that I could have a lawyer?

3

[DET. FREEMAN]: Yeah, That's . . . and if you want to answer some questions now you can always get a lawyer then or now, whatever, just like what it's saying here but if you want to start talking and then if you decide if you want to stop that's fine too.

[DEFENDANT]: I just want to get on tape that I ain't kill that lady.

[DET. FREEMAN]: Okay. Well, I would like for you to initial and . . . and then sign first.

[DEFENDANT]: Uh . . .

[DET. SHAW]: The way . . . the way this law works, it's called the Miranda Law, okay.

[DEFENDANT]: Uh-hum (yes).

[DET. SHAW]: This guy that got arrested . . . he confessed to a crime and then when it came time for court he said well I didn't know I didn't have to say anything so that's why they make us read this to you now.

[DEFENDANT]: Yeah.

[DET. SHAW]: Just so you understand that basically you don't have to answer every question that we ask you. You can answer some of them and not others. You don't have to answer any questions if you don't want but if you want to answer some of them and not others or if you want to tell your side of the story and not answer any questions you can do that too. But before we can listen to you or anything else you have to sign saying you understand what your rights are and you're willing to speak about it even if it's just to tell your side of the story and not to answer questions that's your . . . prerogative.

The defendant then signed the rights waiver form and spoke with police. During the interview, he admitted his involvement in the robbery and shooting at the convenience store.

On cross-examination, Detective Freeman testified that he did not interpret the defendant's comment, "it ain't possible that I could have a lawyer," as an indication that the defendant did not understand his rights. He also claimed that the defendant said that he understood his rights. Furthermore, Detective Freeman said that Detective Shaw's statement, "before we can listen to you or anything else you have to sign," did not mean that the defendant had to sign the form even if he did not wish to waive his rights. Detective Freeman said that the defendant "didn't indicate to me

4

that he wanted a lawyer at that time, he indicated to me he wanted to answer questions without a lawyer." The detective said that had the defendant requested counsel, the interview would have ended.

At the conclusion of the first suppression hearing, the trial court denied the defendant's motion. Although the defendant did not argue during the first suppression hearing that he unequivocally requested counsel, the trial court commented that the defendant's statement regarding a lawyer "certainly does look equivocal, because it does look like Detective Freeman and Detective Shaw did make it clear to him that he didn't have to answer anything." In its written order denying the defendant's second motion to suppress, the trial court stated,

> Clearly the defendant . . . did not make an unequivocal request for an attorney as is required under the United States and Tennessee Constitutions and as such the Chattanooga Police [o]fficers were free to continue to talk to him and any subsequent statement given by the defendant, Charles Nash, was freely and voluntarily given.

ANALYSIS

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App. 1999). However, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Furthermore, an appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v.Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

Both the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution protect a person against compelled self-incrimination. The Supreme Court has held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Specifically, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. A defendant may waive those rights, but such waiver must be made "voluntarily, knowingly, and intelligently." Id. The State has the burden of proving the waiver by a preponderance of the evidence. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997).

"Encompassed within [the protection against self-incrimination] is the right to counsel, which is applicable whenever a suspect requests that counsel be present during police-initiated custodial

5

interrogation. When a suspect invokes that right to counsel, police must cease questioning until counsel is present." State v. Saylor, 117 S.W.3d 239 (Tenn. 2003) (footnote omitted) (citing Miranda, 384 U.S. at 445-46; Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); State v. Stephenson, 878 S.W.2d 530, 548 (Tenn. 1994)). In Saylor, our supreme court held,

> The standard for a valid invocation of the right to counsel is the same under both [a]rticle I, [s]ection 9 [of the Tennessee Constitution] and the Fifth Amendment. The accused "must articulate his desire to have counsel present sufficiently clearly that a reasonable [police] officer . . . would understand the statement to be a request for an attorney." If the suspect fails to make such an unambiguous statement, police may continue to question him without clarifying any equivocal requests for counsel.

Saylor, 117 S.W.3d at 246 (internal citations omitted); see Davis v. United States, 512 U.S. 452, 459-61 (1994); State v. Huddleston, 924 S.W.2d 666, 670 (Tenn. 1996). "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." Edwards, 451 U.S. at 484. "Whether the [accused made] an equivocal or unequivocal request for an attorney is a question of fact" determined by the trial court. State v. Farmer, 927 S.W.2d 582, 594 (Tenn. Crim. App. 1996).

Our ability to review this issue is limited based upon the absence of the transcript from the hearing on the defendant's second motion to suppress—the motion in which the defendant argued that he unequivocally invoked his right to counsel. The only evidence we have regarding this issue,[2] the audio recording of the defendant's statement to police and the transcript of the interview, does not preponderate against the trial court's finding that the defendant's statement, "it ain't possible that I could have a lawyer," was not an unequivocal request for counsel. The defendant's comment appears similar to the comments defendant Saylor made to police before signing his waiver of rights form:

| | |
|---|---|
| Officer: | You're arrested ain't you? |
| Saylor: | For what? |
| Officer: | We'll let you know in a minute. |
| Saylor: | People, I haven't done nothing. Only thing I can figure is that I've violated my parole. That's the only thing I can figure. That's about the only thing I can figure. |

---

[2]As stated above, the record does contain the transcript from the first suppression hearing, held March 5, 2007. However, the defendant focused his argument at that hearing on his contention that he did not understand his Miranda rights before his police interview. The issue which the defendant raises on appeal, whether he unequivocally invoked his right to counsel, was not addressed at that hearing.

| | |
|---|---|
| Officer: | What are you on parole for? |
| Saylor: | *Well . . . I guess it don't matter until I can get a lawyer present.* |
| Officer: | It don't make any difference to me. |
| Saylor: | *I'm supposed to have a lawyer though, don't I?* |
| Officer: | Hmm? |
| Saylor: | *I have to have a lawyer present, I reckon. Before you ask me. That's the story, isn't it?* |
| Officer: | What's that? |
| Saylor: | *You have to have a lawyer present before questioning.* |
| Officer: | I ain't asked you any questions! |
| Saylor: | That's right. |

Saylor, 117 S.W.3d at 243. The supreme court characterized Saylor's remarks as "generic and equivocal statements made by a person who is still in the decision making process." Id. at 246. We find this assessment to be an apt description of the comment this defendant made to Detectives Shaw and Freeman after being informed of his rights but before signing the rights waiver form. In short, the defendant did not articulate his request for counsel with such clarity that a reasonable police officer would believe his statement to be a request for an attorney. We therefore conclude that the defendant's constitutional claims are without merit.

### CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed. The case is remanded to the trial court for the purpose of entering corrected judgments of conviction, as provided for in this opinion.

_____
D. KELLY THOMAS, JR., JUDGE