# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 26, 2000 Session

## SLATER BELCHER v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Criminal Court for Blount County**
**No. C-8931, C-8997     D. Kelly Thomas, Jr., Judge**

---

### No. E1999-02287-CCA-R3-PC
### October 10, 2001

---

A jury convicted the petitioner, Slater Belcher, of first degree murder. The petitioner challenged his conviction and sentence on direct appeal, and this court affirmed both. See State v. Slater Belcher, No. 03C01-9608-CC-00299, 1997 WL 749392, at *1 (Tenn. Crim. App. at Knoxville, Nov. 26, 1997). In his direct appeal, the petitioner alleged that he received ineffective assistance of counsel, but this court declined to rule on the merits of that claim, as the claim was not properly before the court. See id. The Tennessee Supreme Court denied the petitioner's request for permission to appeal. See id. Thereafter, the petitioner filed a petition for post-conviction relief, under the circumstances, the proper forum for alleging ineffective assistance of counsel. The trial court held hearings on three different dates to determine the merits of the petitioner's claim and ultimately denied his petition. The petitioner files this appeal challenging the trial court's determination. After a complete review of the record in this case, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., JJ., joined and JOSEPH M. TIPTON filed a concurring opinion.

Kevin W. Shepherd, Maryville, Tennessee, for appellant, Slater Belcher.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Peter M. Coughlan, Assistant Attorney General; Mike Flynn, District Attorney General; and Jerry Cunningham, Assistant District Attorney for appellee, State of Tennessee.

### OPINION

### Factual Background

The petitioner's wife, Denise Belcher, was having an affair with the victim, Larry Wyatt, who was also the petitioner's best friend. The petitioner and his wife lived in an apartment complex that they managed. Joan Huiet, a friend of the Belchers, also lived in this apartment complex. Ms. Huiet

and Mr. Wyatt had been previously romantically involved and were still friends at the time of his death. Ms. Huiet's boyfriend and occasional houseguest, David Allen, was visiting Ms. Huiet on the evening of Mr. Wyatt's death.

These individuals' testimony about the events that transpired on the evening of Mr. Wyatt's death is conflicting. However, it appears that at some point before the murder, the petitioner learned of his wife's affair with his best friend from both Ms. Huiet and Mr. Allen and that Ms. Huiet had informed Ms. Belcher that the petitioner now knew of the affair. On February 26, 1995, the petitioner returned to his apartment and discovered that his wife was not at their apartment, but was instead at Mr. Wyatt's home. The petitioner, who was visibly upset, put away a gun on a high shelf so that he would not be tempted to "blow his brains out." At the petitioner's request, Ms. Huiet then called Mr. Wyatt's apartment and informed Mr. Wyatt and Ms. Belcher that the petitioner was on his way to the Belchers' apartment. The petitioner then moved his car so as to conceal his presence at his apartment. Ms. Belcher and Mr. Wyatt decided to go to the Belchers' apartment to discuss the matter with the petitioner.

When the two arrived at the Belchers' apartment complex, the petitioner argued with them and hit his wife on her upper arm with a large stick. Ms. Belcher testified that she then fled. However, Ms. Huiet testified that Ms. Belcher fled after Mr. Wyatt was shot and that Ms. Belcher told her that "He shot him." After the shooting, the petitioner then asked Mr. Allen, Ms. Huiet's boyfriend who was asleep at Ms. Huiet's apartment, to help him move the body. Mr. Allen and the petitioner then carried Mr. Wyatt's body and placed it in Mr. Wyatt's car. The petitioner then drove to a nearby ice cream parlor where the petitioner had instructed Mr. Allen to meet him. Upon their arrival at the ice cream parlor, the petitioner handed Mr. Allen the victim's baseball cap and a gun wrapped in a towel and instructed Mr. Allen to dispose of these items. Shortly after Mr. Allen disposed of the items, he alerted the police of the homicide. Shortly thereafter, the police arrested the petitioner.

At trial, the petitioner did not testify. However, the prosecution introduced the recorded statement that he made to the police shortly after his arrest and played it for the jury. In his statement, the petitioner stated that he encountered Mr. Wyatt in the hallway of his apartment building and that Mr. Wyatt slapped him. The petitioner, in turn, went to get a gun to scare Mr. Wyatt. The gun accidentally went off and shot Mr. Wyatt. The petitioner attempted to take Mr. Wyatt to the hospital, but abandoned that attempt when he realized that Mr. Wyatt was dead.

The petitioner was tried and convicted of first degree murder. See Slater Belcher, 1997 WL 74932, at *1. On direct appeal, the petitioner challenged, inter alia, the effectiveness of his trial counsel. Id. This court affirmed the lower court, stating that the appropriate forum for challenging the effectiveness of counsel was a post-conviction petition for review, as opposed to direct appeal. Id. at *5-*6. The petitioner then filed a post-conviction petition, which the trial court denied. In the instant appeal, the petitioner challenges the trial court's denial of his petition, claiming that his trial counsel ineffectively represented him in four respects: (1) trial counsel failed to file any pre-trial motions; (2) trial counsel failed to effectively cross-examine several state witnesses; (3) trial counsel failed to prepare a state's witness, although they had an opportunity to do so; and (4) trial counsel failed to present a theory of the case to the jury.

After reviewing the record, we find that the petitioner's claims of ineffective assistance of trial counsel are without merit, as the petitioner failed to demonstrate that his trial counsel's representation was deficient and prejudicial.

## Post-Conviction Standard of Review

In analyzing the issue raised, we first note that a petitioner bringing a post-conviction petition for relief bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks, 983 S.W.2d at 245 (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Furthermore, the appellate court is bound by the trial court's findings of fact, unless the record preponderates against those findings. Hicks, 983 S.W.2d at 245.

## Effectiveness of Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). "Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "The burden is on the petitioner to show that the evidence preponderated against those findings." Id.

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins, 911 S.W.2d at 347. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

## A. Failure to File Pre-Trial Motions

The petitioner alleges that his trial counsel's assistance was ineffective because his trial counsel failed to file any pre-trial motions, specifically (1) discovery motions; (2) a motion to suppress the tape-recorded statement that the petitioner made to the police; (3) a motion to request an investigator to aid in the preparation of the case; (4) a motion to request a psychologist to assist in the preparation of the case and testify as to the petitioner's mental state at the time of the victim's death; and (5) a motion to appoint a ballistics expert to explain the trajectory of the bullet as it entered the victim's body.

First, the petitioner asserts that his trial counsel was ineffective as they failed to file any pre-trial motions, including any motions for discovery. However, the petitioner's trial counsel participated in an extensive pre-trial discovery conference with the prosecution, in which trial counsel received all discoverable material that they were entitled to receive, as well as several witness statements that they were not entitled to receive until closer to the trial date. Therefore, because the petitioner's trial counsel received everything that they were entitled to receive pursuant to any discovery motion, the petitioner has failed to establish that he was prejudiced by his counsel's decision not to file any discovery motions. See Anthony Cole v. State, No. 02C01-9711-CC-00445, 1998 WL 725793, at *2 (Tenn. Crim. App. at Jackson, October 19, 1998) (holding that a petitioner was not prejudiced by his trial counsel's decision not to file any pre-trial motions because counsel participated in an extensive pre-trial conference).

Second, the petitioner claims that his trial counsel should have moved to suppress the tape-recorded statement that he made to the police after his arrest. The petitioner asserts that the statement was made without a knowing and voluntary waiver of his rights to remain silent and to consultation with an attorney. As support for this assertion, the petitioner cites to the fact that after being Mirandized, he asserted his right to remain silent, which was not scrupulously honored. Instead, the police officers questioned him once he was brought to the station house. However, the interrogating officer testified at trial that after the petitioner reached the police station, he indicated that he was willing to talk to the police about the events of the night in question. Although a defendant's invocation of his right to remain silent must be scrupulously honored, the defendant waives that right if he initiates conversation with the police after he has invoked his right to remain silent. See State v. Thompson, 768 S.W.2d 239 (Tenn. 1989). We find that the trial court implicitly found the officer's testimony to be credible, thereby finding that the petitioner waived his right to remain silent. In its order denying the petitioner's motion for new trial, the trial court determined that a motion to suppress the evidence would not have affected the outcome of the case. Therefore, the trial court implicitly ruled that the petitioner's rights were not violated, and therefore a motion to suppress would have been unsuccessful. Thus, the petitioner is not entitled to relief on this ground.

Additionally, the petitioner asserts that the police violated his right to consult with an attorney because he made an equivocal request for an attorney. He cites to an excerpt of his tape-recorded statement in support of this assertion. In the excerpt, the interrogating officer repeatedly asks the petitioner if he understands his rights and if he wishes to talk about the incident. The petitioner, who is extremely emotional, eventually responds that he does understand his rights, agrees to talk to the interrogating officer, and makes an equivocal request for an attorney, stating, "I understand what you told me, but do I need, do I need, should I have my lawyer here? I don't know. I, I don't know."

The petitioner claims that this was not a knowing waiver of his rights, as he had never before been interrogated by police and was unfamiliar with the criminal justice system. He claims that the interrogating officer had a duty to clarify whether the petitioner was requesting an attorney. However, per State v. Huddleston, 924 S.W.2d 666 (Tenn. 1996), interrogating officers do not have a duty to ask clarifying questions when the defendant makes an equivocal request for an attorney. Id. at 669[1]. Therefore, the petitioner is not entitled to suppression of his statement on these grounds. Moreover, counsel made a strategic decision to allow the recorded statement to be admitted as evidence at trial, as it would serve to communicate the petitioner's emotional state and version of the events without subjecting him to cross-examination. As stated supra, this court will not second-guess a reasonable trial strategy, and after a thorough review of the record, we find that counsel's strategic decision was reasonable. Therefore, the petitioner has not established that the failure of counsel to file a motion to suppress constituted deficient performance.

## B. Failure to Obtain Expert Services

The petitioner asserts that his counsel was ineffective in their failure to hire an investigator to assist with the preparation of his case. The petitioner testified that a private investigator had offered his services to him, requiring payment only if the petitioner was convicted of less that first degree murder. The petitioner further alleges that he conveyed this offer to defense counsel, who declined the offer, and that the services of an investigator would have been extremely helpful in reconciling the conflicting statements of the witnesses. During the post conviction hearing, the lead defense attorney testified that while he was aware that this investigator had offered his services to the petitioner, the petitioner never requested that his counsel hire the investigator, and he was under the impression that the petitioner's family was considering hiring the investigator. Additionally, the lead counsel also testified that he did not believe that he could show the requisite need to obtain a court-appointed investigator. While the witnesses' statements were conflicting, the post-conviction court found that all of the witnesses were cooperative and spoke to the petitioner's counsel willingly. The petitioner has failed to allege what information could have been obtained through an investigator that his counsel did not obtain. Thus, he has failed to demonstrate that his counsel's failure to seek an investigator's services constituted deficient performance or prejudiced him in any way.

Fourth, the petitioner alleges that his counsel's representation was ineffective because they failed to request a psychologist's assistance in evaluating the mental state of the petitioner.

---

[1] We acknowledge that the opinion in Huddleston does not mention State v. Stephenson, 878 S.W.2d 530 (Tenn. 1994); which held that both the Fifth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution require interrogating officers to clarify an equivocal request for an attorney. Nothing in Stephenson however suggests that the state constitution offers any broader protections in this area than does the federal constitution. Indeed, it appears that the court's holding in Stephenson is based on its interpretation of Michigan v. Jackson, 475 U.S. 625 (1986); that the Fifth Amendment requires clarification of an equivocal request for an attorney. Any notion that Jackson should be read in this way was dispelled by the United States Supreme Court in Davis v. United States, 512 U.S. 452 (1994). In Davis the Court held that the Fifth Amendment does not place a burden on police to clarify an equivocal request for an attorney before continuing interrogation. Thus, we believe that following Davis and Huddleston, neither the federal nor state constitutions require officers to stop interrogating a suspect in order to clarify an unequivocal request for an attorney.

Specifically, the petitioner alleges that a psychologist could have helped to determine whether the petitioner acted with premeditation, in self-defense, or had a diminished mental capacity. However, defense counsel both testified that because they did not believe that the petitioner was insane and because the petitioner indicated that he understood the charges against him, they did not believe that his mental health was an issue. Furthermore, counsel testified that the petitioner refused to speak with them about the events that transpired on the night in question, thus giving them no information upon which to negate a theory of premeditation or to base a theory of self-defense. At the post-conviction hearing, the petitioner failed to introduce the testimony of any mental health expert that might have been helpful in the defense of this case. Therefore, the petitioner has failed to meet his burden of establishing deficient representation or resulting prejudice with regard to counsel's failure to utilize the services of a psychologist.

Finally, the petitioner alleges that his counsel's representation was ineffective because they failed to move to have a ballistics expert appointed to testify regarding the peculiar trajectory of the bullet that killed the victim. However, the petitioner failed to introduce the testimony of a ballistics expert at the post-conviction hearing and has thus failed to prove that counsel was deficient in this regard or that he was prejudiced by this omission.

### C.  Effectiveness of Cross-Examinations

The petitioner also contends that his counsel ineffectively represented him because counsel failed to conduct thorough cross-examinations of several state witnesses. Specifically, the petitioner contends that his defense counsel's cross-examination was deficient because counsel declined to cross-examine two witnesses at all and briefly cross-examined the remaining witnesses.

The petitioner argues that defense counsel should have inquired about the friendship that developed between the petitioner and the lead detective during the cross-examination of that detective. The petitioner contends that counsel was aware that this friendship had developed and that counsel should have exposed the friendship on cross-examination to show that the petitioner may have let his guard down when around the detective, believing him to be a friend. However, the petitioner has failed to prove that he actually did let his guard down as a result of this friendship or how he was prejudiced by counsel's failure to cross-examine the detective on this point.

Additionally, the petitioner asserts that his counsel should have more thoroughly cross-examined this detective regarding the fact that a very small amount of methamphetamine was found on the victim's person, indicating that the victim could have been acting aggressively at the time of his death. However, the amount of methamphetamine found on the victim is equivalent to the amount found in diet pills, and the drug was found accompanied by vitamin powder, a point that the prosecutor brought up on redirect. Therefore, the petitioner has failed to prove that defense counsel's cross-examination of this witness was deficient.

With regard to counsel's cross-examination of the other witnesses, the petitioner has failed to establish what information counsel should have elicited on cross-examination that was not elicited. Therefore, the issue has no merit.

### D.  Failure to Prepare a State's Witness

The petitioner claims that his trial counsel failed to seize the opportunity of preparing state witness Denise Belcher.  However, the petitioner has failed to demonstrate that he was prejudiced by this lack of preparation.  At the post-conviction hearing, Ms. Belcher stated that she testified truthfully at trial and that while she would have framed her answers differently if she had been prepared by defense counsel, she would not have changed her testimony.  Therefore, the petitioner has failed to meet his burden, and the issue is without merit.


### E.   Failure to Develop and Present a Theory of the Case to the Jury

The petitioner contends that his counsel ineffectively represented him because they failed to develop and present a theory of his case to the jury.  At trial, defense counsel relied on the argument that the prosecution had not proven that the petitioner was guilty of murder beyond a reasonable doubt, because the state had failed to reconcile the testimony of its witnesses. The petitioner asserts that his defense counsel was deficient in not exploring the possible theory of self-defense, the theory that Ms. Belcher committed the murder, the theory that Ms. Huiet committed the murder, or the theory that Mr. Allen was involved in the murder.  At the post-conviction hearing, defense counsel testified that they could not establish any of these theories of the case because the petitioner refused to discuss the specifics of his case, thus leaving them with no information upon which to base any such theory.   The petitioner does not dispute that he would not discuss the case with his counsel, insisting that he does not remember the events at issue.  Thus, presented with an uncooperative witness and irreconcilable testimony, defense counsel decided that the only theory that they could present to the jury was that the prosecution had not met its burden.   Based on these facts, we find that this was an acceptable trial strategy and therefore did not result in deficient representation.

In light of the above considerations, we hold that the petitioner has failed to establish that his counsel's representation was ineffective.


### Conclusion

For the forgoing reasons, we find that none of the petitioner's allegations merit relief.  Accordingly, the judgment of the trial court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE