# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 5, 2002

## ROBERT E. PUGH v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Criminal Court for Shelby County**
**No. P-22240     J. C. McLin, Judge**

**No. W2001-02349-CCA-R3-PC  - Filed April 16, 2003**

A Shelby County grand jury indicted the petitioner on multiple offenses.  At the conclusion of a trial on the indictment first prosecuted, a jury convicted the petitioner of aggravated robbery. See State v. Robert E. Pugh, No. W1999-01260-CCA-R3-CD, 2000 WL 298697, at *1 (Tenn. Crim. App. at Jackson, Mar. 17, 2000).  For this offense he received a twelve-year sentence as a standard offender.[1] Id.  He subsequently pled guilty to ten additional charges. The trial court then sentenced him as a multiple offender for nine of these counts and as a violent offender for one count.  His agreed upon sentences for these offenses in combination with the aforementioned twelve-year sentence resulted in an effective twenty-six-year sentence for all eleven convictions.  However, the petitioner later filed a pro se post-conviction petition attacking his pleas by alleging that his counsel at that time provided him ineffective assistance. The trial court appointed counsel, who filed an amended petition also alleging ineffective assistance at trial.  Following a hearing, the trial court found none of the petitioner's allegations meritorious and denied him relief.  Through this appeal the petitioner continues to assert that he received ineffective assistance of counsel regarding his guilty pleas and the trial at issue. However, after reviewing the record provided and appropriate authorities, we affirm the trial court's denial of the post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Robert Pugh.

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dan Woody, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] The petitioner unsuccessfully pursued a direct appeal of this conviction. See id.

# OPINION

## Factual Background

While we will include more detail from the post-conviction hearing within our treatment of the individual issues, at the outset we note that the petitioner faced numerous charges including aggravated robbery counts, a rape count, a Class D felony evading arrest count, etc. Of these the petitioner first faced trial on one of the aggravated robbery counts. At the conclusion of this trial, the jurors convicted the petitioner of this offense. Id. In deciding the petitioner's direct appeal of this conviction, our Court summarized the facts as follows:

> On April 26, 1996, Joseph Oliver, a co-manager at a Wendy's restaurant on 1593 Union Avenue in Memphis, Tennessee, was robbed at gunpoint. He testified that he left the restaurant for the First American Bank on Union Avenue at approximately 3:30 to 4:30 p.m. to get coins for the restaurant. When he left the bank, he noticed that a car was following him. The car followed him to the Wendy's and pulled behind him. Oliver testified that the car could have been a Chevrolet Malibu and thought that the vehicle was maroon or a similar color. The vehicle approached him as he left his vehicle. An individual leapt from the car with a revolver and demanded money. He threw the money on the ground and the individual took it.

> At trial, Oliver testified that on the day of the robbery he identified the defendant from a lineup. Further, he identified the defendant in court the day of the trial. He also identified a gun introduced in evidence as being similar, if not the same, gun used against him in the holdup. Finally, Oliver testified that, after the robbery, he entered the restaurant and activated the holdup alarm to which police vehicles responded.

> Mark Rewalt, of the Memphis Police Department Crime Scene Unit, testified that he examined a Chrysler, the car the defendant abandoned after police pursuit, on April 26, 1996, for fingerprints. He testified that he obtained two latent prints, one from the driver's side door and one from the back driver's side door, and preserved those prints on the appropriate card medium. He identified those latent prints for the jury.

> Cham Payne, an officer of the Memphis Police Department Crime Scene Unit, testified that he located and preserved latent prints from the hood of the vehicle, a Chrysler LeBaron. He also obtained a latent print from an empty beer bottle found in the floorboard of that vehicle. Again, Officer Payne identified the cards containing those latent prints in court.

Jerry Sims, a latent fingerprint examiner for the Memphis Police Department, identified these four prints as belonging to the defendant.

Lieutenant Hollis W. Hightower, an investigator on the robbery squad the day of the robbery, stated that he interviewed the defendant and, after advising him of his rights, took a statement from the defendant in which he admitted to committing the robbery. The defendant stated that the car used in the robbery was his brown 1981 Chrysler LeBaron. Further, the defendant explained, on the day of the robbery, he located Dwayne Jones on the streets of Memphis and at that point, the two agreed to commit a robbery. The defendant stated that he used a .32 caliber revolver, purchased on the street, to rob Oliver at the Wendy's. He testified that approximately ten minutes after the robbery he and Dwayne Jones were pursued in the Chrysler by the police. When stopped, he leapt from the car and escaped. Later that same day, he was arrested and identified as the robber.

Id. (footnote omitted). As noted, the trial court sentenced the petitioner to twelve years as a standard offender for this conviction. Id.

The next cases set for trial involved a series of five offenses allegedly committed by the petitioner on March 28, 1997. At the post-conviction hearing, former defense counsel indicated that the State had even stronger proof to present at this trial than it had in the above-outlined case, and the record reflects that at an early stage in the proceeding, the petitioner agreed to plead guilty to these and other pending indictments. More specifically, we note that the petitioner pled guilty to four counts of aggravated robbery, one count of robbery, one count of rape, one count of possession of a prohibited weapon, one count of possession of a handgun by a convicted felon, one count of possession with intent to sell one half ounce or more of a substance containing cocaine, and one Class D felony count of evading arrest. A number of these offenses were committed while on bond; thus, the trial court noted that the situation required consecutive sentencing. For all eleven convictions at issue in this appeal, the petitioner received, as noted earlier, an effective sentence of twenty-six years.

The petitioner's former attorney who was called to testify at the post-conviction hearing had assumed the representation of the petitioner from another individual in the public defender's office and had represented the petitioner throughout the petitioner's trial and at the relevant guilty plea proceeding. Only he and the petitioner provided testimony at the post-conviction hearing. At the close of the proof therein, the trial court denied the petitioner relief. Subsequently, the trial court more fully set out its rationale for this denial in an order. Regarding matters raised in this appeal, the court determined that the petitioner had failed to prove deficient performance by former counsel.

## Post-Conviction--Standard of Review

When a petitioner brings a post-conviction petition, he or she bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Moreover, the trial court's findings of fact "are conclusive on appeal unless the evidence preponderates against the judgment." Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996).

## Ineffective Assistance of Counsel

### A. Standard of Review

In addition, a petitioner seeking post-conviction relief on the basis of ineffective assistance must prove "that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial." Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). To satisfy the deficient performance prong of this test, the petitioner must establish that the service rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Furthermore, to demonstrate the prejudice required, the petitioner "must show that there is a reasonable probability that, but for counsel's" deficient performance, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). Furthermore, "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Id.

### B. Alleged Ineffective Assistance at Trial

Through this appeal, the petitioner avers that his trial counsel provided ineffective assistance by failing to attempt to suppress the petitioner's confession. Before considering this matter, we note a concern mentioned by the State through a footnote in its brief. The State correctly points out that the petitioner's original petition attacks his convictions arising out of his guilty pleas entered in one proceeding and that the amended petition filed by appointed counsel attacks his conviction arising from a separate jury trial. Tennessee Code Annotated section 40-30-204(c) provides that "[t]he petition for post-conviction relief shall be limited to the assertion of claims for relief from the judgment or judgments entered in a single trial or proceeding. If the petitioner desires to obtain relief from judgments entered in separate trials or proceedings, the petitioner must file separate petitions." Tenn. Code Ann. § 40-30-204(c). Tennessee Supreme Court Rule 28, in pertinent part, echos this requirement. See Tenn. Sup. Ct. R. 28, § 5(c). Therefore, counsel's filing of an amended petition attacking the petitioner's jury trial conviction was improper. Trial courts should scrupulously honor these provisions and require the filing of separate petitions. We find however, that a post-conviction court, may in its discretion and in the interests of judicial economy, conduct a single hearing where there are multiple petitions presenting common issues of fact relating to a single petitioner. Thus, in the instant case a remand at this point for the purpose of ensuring compliance with this requirement would amount to little more than a procedural formality.

More precisely stating the issue, the petitioner asserts that trial counsel should have utilized the rationale of State v. Huddleston, 924 S.W.2d 666 (Tenn. 1996), to suppress the petitioner's confession to this crime. Huddleston has been interpreted as holding "that when a person confesses after having been detained for 48 hours without a judicial determination of probable cause, the confession should be excluded unless the prosecution can show that the confession was sufficiently an act of free will in order to purge the taint of the unlawful detention." State v. Webster, 81 S.W.3d 244, 251 (Tenn. Crim. App. 2002). In Huddleston our supreme court employed four criteria to aid in determining whether the statement at issue constituted "an act of free will." Huddleston, 924 S.W.2d at 674-75. These criteria are: "(1) the presence or absence of Miranda warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and finally, of particular significance, (4) the purpose and flagrancy of the official misconduct." Id.

With this in mind we turn to a consideration of the record in the instant case. Though we have thoroughly reviewed the evidence numerous times, we are unable to reliably compile a chronology pin-pointing 1) the time of the petitioner's incarceration relative to 2) the time of his confession to the tried aggravated burglary and to 3) the time of a judicial finding of probable cause. Among these three events, the record best offers supportive proof concerning the time of the petitioner's confession. Testimony in the hearing references a copy of the statement introduced at the petitioner's trial. Allegedly the document indicates that the petitioner made this statement on April 28, 1996, at 5:00 p.m.[2] However, the petitioner's arrest for this offense may have occurred at 2:30 p.m. on April 28, 1996, or possibly at some time after 4:30 p.m. on April 26, 1996.[3] Furthermore, we can find no information regarding the time of a judicial determination that probable cause existed. Former trial counsel could not recall such detail with clarity, the petitioner was not questioned concerning this matter, and documentation which likely could have established this fact was not submitted to the record.

Without proof of the timing of these events, the petitioner has failed to show that a basis existed to support a Fourth Amendment violation requiring suppression of a statement under the rationale of State v. Huddleston. Absent such a basis, we cannot find that former counsel provided deficient performance by not filing a motion to suppress the petitioner's confession on this ground. If there is no showing of deficient performance, then there can be no finding of ineffective assistance of counsel. See, e.g., Henley, 960 S.W.2d at 580. As previously noted, a petitioner in a post-conviction setting bears the burden of proving the allegations in his or her petition by clear and

---

[2] This document was not made an exhibit to the record.

[3] During the hearing the State referenced an "arrest ticket" purportedly indicating that the authorities arrested and charged the petitioner with this aggravated robbery on April 28th at 2:30 p.m. Unfortunately, this document was also not made an exhibit. One of the factors, therefore, left unclear is whether this paperwork constituted an internal jail document that did not of itself evince a probable cause finding. Furthermore, according to the direct appeal of this conviction, the petitioner had fled the scene of the tried aggravated robbery only to be arrested later on the same day, April 26, 1996. Robert E. Pugh, 2000 WL 298697, at *1. Testimony from the post-conviction hearing suggests that the arrest on the 26th was for a second aggravated robbery committed on that day; however, the direct appeal states that the victim of the tried aggravated robbery identified the petitioner from a line-up on the 26th. Id. Basically, because of a lack of physical or verbal proof, confusion remains regarding two of the three times needed to be known in order to successfully raise a claim under Huddleston.

convincing evidence. See Tenn. Code Ann. § 40-30-210(f). The petitioner in this appeal did not do so; therefore, his claim lacks merit.

### C. Alleged Ineffective Assistance Concerning the Guilty Pleas

Through his appellate brief the petitioner avers that former counsel provided ineffective assistance by failing to spend sufficient time with the petitioner to prepare for the cases to which the petitioner pled guilty on September 1, 1999.[4] Regarding this issue, the petitioner testified during the post-conviction hearing that former counsel had only come to see him on two occasions concerning these charges. The petitioner added that the first of these two visits took place on the night before his second trial was set to begin. Additionally, the petitioner affirmed that his "main complaint" was that he had "pled guilty to the rape charge" but had not intended to do so. The petitioner later acknowledged that he had been aware that he was pleading guilty to this charge prior to entering the plea but claimed that he had not known until he arrived at the penitentiary that he "had all of the time" to serve on that charge.

Beyond this, we note information elicited or underscored by the lower court during the petitioner's post-conviction testimony. First, the petitioner indicated that he would not want to risk consecutive sentencing on a number of the offenses involved in his plea agreement should the court set aside his pleas. In addition, the petitioner acknowledged that he was not threatened or forced into pleading but had done so because he had thought that "it was in his best interest at the time."

When called to testify at the post-conviction hearing, the petitioner's former counsel stated that he had been employed with the public defender's office for approximately six years and had practiced law in Tennessee for about fourteen years. Former counsel recalled that he had taken over the representation of the petitioner from another attorney in the public defender's office. Counsel indicated that he spoke with this attorney briefly upon receiving the petitioner's file and then "spent a good deal of time" conferring with her after reviewing it. Neither party asked former counsel about the number of times he had visited the petitioner to discuss the pleas. However, former counsel recounted questioning the petitioner to no avail on at least two occasions concerning possible grounds for suppressing the petitioner's confessions and stated that he had reviewed the discovery materials with the petitioner. Though the petitioner's claim was that he had not committed the offenses, former counsel underscored the strength of the prosecution's evidence on the cases set for resolution in the second trial. According to former counsel, an off-duty police officer had observed the petitioner committing the aggravated robbery at issue, pursued the petitioner without losing sight of him, and ultimately apprehended the petitioner in possession of the stolen merchandise. The State also had within its arsenal the petitioner's confession since, as above-referenced, counsel had been unable to ascertain valid grounds for the suppression thereof.

Faced with these facts, former counsel acknowledged that he had continued attempting to negotiate a plea even after the completion of jury selection. Receiving a two-year reduction in the

---

[4] Other allegations of counsel's deficiencies regarding his assistance in the petitioner's pleas were mentioned in the petitioner's pro se post-conviction petition and at the evidentiary hearing thereon; however, the assertion that counsel spent insufficient time with the petitioner in preparation for these cases was the sole claim selected for argument regarding this issue in the petitioner's brief.

previous offer, counsel relayed this to the petitioner, who "somewhat reluctantly agreed" to accept it. This witness noted that the petitioner's main concerns had been pleading guilty to a cocaine case involving a co-defendant and to the rape case. Nevertheless, counsel had explained to the petitioner that the petitioner could potentially receive a twenty-year sentence upon conviction for only the aggravated robbery count in the process of being tried at that time and that this sentence could be ordered to be served consecutively to the twelve-year sentence that the petitioner had received for the previous aggravated robbery conviction. Counsel admitted that he had not spent a great deal of time preparing a defense to the rape case since, among other considerations, the State had indicated that it would be the last tried. Former counsel acknowledged that the rape case was not strong and stated that he had attempted to convince the prosecution to dismiss the rape charge only to be informed that if the petitioner wanted the offer, the petitioner would have "to plead to everything." We also note former counsel's testimony that he had explained to the petitioner the available options and the details of the plea, including the fact that the sentence on the rape offense would be served at one hundred percent.

For the purposes of this appeal, we also find portions of the transcript recording the petitioner's guilty pleas to be relevant. With regard to the petitioner's aforementioned alleged lack of knowledge that he would not be eligible for parole on the rape conviction, the following exchange took place between the petitioner and the judge presiding over the guilty plea proceeding:

[Judge:] Now, although . . . you're pleading to Range One of rape, it's also as a violent offender so you don't get thirty percent there. You get 100 percent. You have to do that eight years. Do you understand that?

[Petitioner:] Yes, sir.

[Judge:] You don't get parole for it. Now you could get possibly up to fifteen percent behavior credits of good time if you're good, but you won't ever meet parole board on the rape case. You understand that?

[Petitioner:] Yes, sir.

[Judge:] . . . the eight year sentence is at 100 percent . . . a total of twenty-six years, eight years of which is at 100 percent, the rest at thirty-five percent. Is that your understanding?

[Petitioner:] Yes, sir.

We further note the following exchange concerning counsel's representation:

[Judge:] Is there anything about [your attorney's] representation that causes you some concern? Is there anything – are you entering this guilty plea because he's not ready for trial or because he won't talk to you or any of those attorney problems?

[Petitioner:] No, sir.

[Judge:] Okay. You feel like he's done a good job in representing you?

[Petitioner:] Yes, sir.

[Judge:] Has he subpoenaed or called every witness you wanted him to in the case?

[Petitioner:] Yes, sir.

[Judge:] As far as you know, you-all were ready for trial today. Is that right?

| | |
|---|---|
| [Petitioner:] | Yes, sir. |
| [Judge:] | Okay. Any complaints at all? |
| [Petitioner:] | No, sir. |
| [Judge:] | Is there anything else about this plea that you want to talk to me about, anything that you're dissatisfied about, anything that you're upset about? |
| [Petitioner:] | No, sir. |

After reviewing these and other facts presented in the record, we find that the petitioner has again failed to show that he is entitled to relief. Though the petitioner asserts that he did not believe that the trial court would listen to complaints about former counsel, we still find it significant that the petitioner voiced no complaint about former counsel's representation at the time of his pleas.[5] Furthermore, while former counsel conceded that the rape case was the prosecution's weakest case, counsel had stressed to the petitioner the strength of other State cases. In addition to other damaging proof, the record suggests that the petitioner had given six separate confessions. Former counsel candidly admitted that he had not engaged in much preparation for the rape case pending at the time, in part because the prosecution had indicated that it would be the last of the series to be tried. However, counsel was clear with the petitioner that prosecution's twenty-six-year offer was only available if the petitioner pled guilty to the rape and that the potential effective sentence that the petitioner could receive upon conviction for the offenses involved greatly exceeded the twenty-six-year offer. As above-noted, because of the possibility of his receiving a longer effective sentence, the petitioner admitted during the post-conviction hearing that he would not want to face trial and sentencing on each of these cases were the trial court to set aside his pleas.

Case law is clear that for a petitioner to prevail when claiming that ineffective assistance resulted in his or her pleading guilty, "the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial." Michael Edmondson v. State, No. W2002-00270-CCA-R3-PC, 2002 WL 31625087, at *5 (Tenn. Crim. App. at Jackson, Nov. 20, 2002); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). Under this set of facts and even assuming that former counsel had provided deficient performance, we remain unconvinced that the petitioner would not have pled guilty. Since the petitioner has failed to prove by clear and convincing evidence both prongs of the test for ineffective assistance of counsel, this claim also lacks merit.

### Conclusion

For the foregoing reasons, we conclude that the petitioner's claims merit no relief. Accordingly, we AFFIRM the lower court's judgment.

_____
JERRY L. SMITH, JUDGE

---

[5] A variety of details from the post-conviction hearing call into question the petitioner's credibility.