IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 2, 2005 Session

## WILLIAM PATRICK ROBERSON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Carroll County**
**No. 02CR1840PC     C. Creed McGinley, Judge**

_____

**No. W2005-00163-CCA-R3-PC - Filed September 8, 2005**

_____

The petitioner, William Patrick Roberson, appeals from the post-conviction court's denial of post-conviction relief. On appeal, he contends that his statements to police were taken in violation of his constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966), and that he received the ineffective assistance of counsel. Following our review, we affirm the judgment of the post-conviction court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ. joined.

Guy T. Wilkinson, District Public Defender, and Michael U. King, Huntingdon, Tennessee, for the appellant, William Patrick Roberson.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Robert Radford, District Attorney General; and Stephen D. Jackson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Background**

On March 18, 2002, the petitioner pled guilty to first degree felony murder and especially aggravated robbery. He received a life sentence without parole for his first degree felony murder conviction and a twenty-five year sentence for his especially aggravated robbery conviction. The sentences were ordered to be served concurrently.

On February 26, 2003, the petitioner filed a *pro se* petition for post-conviction relief. The post-conviction court summarily dismissed the petition for failure to assert a colorable claim. This Court reversed the dismissal, concluding that the petitioner raised two colorable claims for post-

conviction relief: ineffective assistance of counsel and involuntary guilty pleas. See William Patrick Robinson v. State, No. W2003-01393-CCA-R3-PC, 2004 WL 875267 (Tenn. Crim. App., at Jackson, April 22, 2004). Upon remand, post-conviction counsel was appointed, an amended petition was filed, and a hearing was held.

At the hearing, the petitioner testified that he was initially picked up in Madison County on a Friday morning and questioned by Investigator David Bunn and Andy Dickson. The petitioner asserted that he asked for an attorney at this time. The petitioner testified that Sunday afternoon he was picked up in Gibson County and transported to the Carroll County jail by Sheriff Bendell Bartholomew and Investigator Becky Keith. According to the petitioner, upon arrival at the Carroll County jail, he was told during the interrogation that he "could be facing the death penalty." Because he was nervous, he wrote out the statement and signed it. The petitioner asserted that his statement was not voluntary and was coerced.

The petitioner testified that Counsel discussed with him how his statement affected his case. However, the petitioner stated that he did not remember any discussion with Counsel concerning the possibility of filing a motion to suppress or how his previous request for an attorney might have affected his case. The petitioner also stated that Counsel advised him "that if [he] didn't take the plea bargain, they were going to file for the death penalty." On cross-examination, the petitioner admitted that he did not tell Counsel that the deputies mentioned the death penalty during his interrogation or that he felt threatened by the statement.

Becky Tillman Keith, an investigator with the Carroll County Sheriff's Department, testified that she and Sheriff Bartholomew questioned the petitioner about his involvement in the murder of Irene Price on a Sunday. Investigator Keith recalled that on Sunday morning Sheriff Bartholomew called her and told her that the Gibson County Sheriff's Department located Ms. Price's truck and had the petitioner in custody. Sheriff Bartholomew asked Investigator Keith to accompany him to the Gibson County jail to pick up the petitioner. Investigator Keith testified that the petitioner was picked up from the Gibson County jail and transported to the Carroll County jail where he was questioned. She stated that she read the petitioner his *Miranda* rights and wrote out his confession. When asked if another law enforcement agency had questioned the petitioner, Investigator Keith stated, "I think that maybe TBI had talked to him sometime prior, earlier in the weekend."

Investigator Keith stated that she did not remember any discussion about the death penalty during the petitioner's interrogation. Investigator Keith recalled that the petitioner's interrogation lasted about an hour and he appeared anxious to talk. She stated, "I think he started talking right away, when he came into the room, right after the rights were read . . . ." According to Investigator Keith's recollection, the petitioner appeared sad, showed remorse, and was crying and stuttering when talking to them. Investigator Keith recalled that she wrote out the petitioner's statement then gave it back to the petitioner to review for mistakes. Afterwards, Investigator Keith asked the petitioner if everything in the statement was true and correct before having the petitioner sign it. Investigator Keith stated that she did not remember the petitioner ever discussing his request for an attorney.

-2-

Sheriff Bendell Bartholomew of Carroll County testified the he questioned the petitioner only once about the murder of Ms. Price. However, Sheriff Bartholomew could not explain why the first page of the petitioner's confession had the date 9/9 but the second page of the petitioner's confession had the date 9/10. Sheriff Bartholomew then recalled that a second, follow-up interrogation was conducted on September 10th but related to the petitioner's first statement given on September 9th.

Sheriff Bartholomew stated that he did not remember any discussion about the death penalty. He further stated that he did not recall the petitioner asking for an attorney prior to signing the waiver of rights, but admitted he knew at the time that the petitioner "asked for an attorney a couple days before when he was at Jackson." According to Sheriff Bartholomew, he had been informed that the petitioner asked for an attorney when an agent from the Tennessee Bureau of Investigation attempted to talk to him on Friday morning at the Jackson jail. Sheriff Bartholomew testified that when he questioned the petitioner in Carroll County, he did not appear more nervous than normal. Sheriff Bartholomew stated that he did not see the petitioner sweating and did not remember if the petitioner stuttered.

The petitioner's co-counsel testified that he was among two attorneys who represented the petitioner. However co-counsel stated that his role in representing the petitioner was very limited. Co-counsel recalled that the petitioner's case had death penalty implications and remembered that the case was resolved with a plea.

Counsel testified that he represented the petitioner. Counsel admitted that at the preliminary hearing he did not question the Sheriff about whether the petitioner requested an attorney. Counsel also admitted that he did not inquire whether the police officers discussed the death penalty with the petitioner prior to the petitioner's confession. As counsel explained, he did not file a motion to suppress the statement because the petitioner remorsefully admitted to him that he did it. Also, counsel stated that the petitioner did not tell him he had requested an attorney while in custody. Counsel further stated that when he went over the confession and waiver of rights form with the petitioner, no issues were raised by the petitioner.

Counsel testified that the petitioner later indicated a change of heart and told him that he confessed because his girlfriend wanted him to. According to counsel, the petitioner's story was investigated and determined to be false. Counsel stated that at some point the State did inform the petitioner that if he did not plead to life without parole, the State would pursue the death penalty at trial. Given the evidence and the petitioner's statement to police, counsel advised the petitioner to take the plea. Counsel stated that he met with the petitioner seven or eight times.

The post-conviction court entered an order denying the petitioner's petition for post-conviction relief. The post-conviction court held that the petitioner did not prove his claim that his confession was coerced and involuntary. The court found that the proof demonstrated that the petitioner was fully advised of his constitutional rights and executed a written waiver demonstrating that he understood and waived his rights. The court also found that the petitioner's confession was voluntary and not influenced by any threat of the death penalty. The court also held that the

petitioner did not prove he received the ineffective assistance of counsel. The court found that the petitioner was represented by capable counsel "who fully investigated his case, engaged in appropriate pre-trial discovery, pursued every legitimate legal theory on behalf of the defendant and ultimately secured a legitimate plea offer from the State which was voluntarily accepted by the defendant."

## II. Analysis

In his appellate brief, the petitioner first argues that his statements to police were taken in violation of his constitutional rights under Miranda v. Arizona. However, the petitioner has waived the issue for failure to bring it to the trial court's attention prior to pleading guilty or preserving the issue for direct appeal. A ground for post-conviction relief is waived "if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ." Tenn. Code Ann. § 40-30-106(g).

The petitioner next argues he received the ineffective assistance of counsel. Specifically, he argues that counsel was ineffective by failing to adequately investigate the circumstances surrounding the petitioner's interrogation and by failing to file a motion to suppress his confession. The petitioner contends that these errors caused him to make an uninformed decision to plead guilty.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this Court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. Id.

To establish ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Arnold v. State, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. Strickland, 466 U.S. at 688; see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. Id. at 697; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Also, a fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland,

466 U.S. at 689; see also Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. Goad, 938 S.W.2d at 369. However, deference is given to strategy and tactical decisions only if the decisions are informed ones based upon adequate preparation. Id. (citations omitted).

Because the petitioner claims that counsel was ineffective in failing to investigate and suppress his confession, this Court will review the constitutionality of the petitioner's confession within this context. Looking at the record before us, we determine that the evidence supports the post-conviction court's findings and conclusions regarding the constitutionality of the petitioner's confession and the effective assistance of counsel.

Both the United States and Tennessee Constitutions protects against compelled self-incrimination. See U.S. Const. amend. V; Tenn. Const. art. I, § 9. As a result, government authorities are prohibited from using statements made by suspects during a custodial interrogation unless the suspect has been previously advised of his constitutional right against compulsory self-incrimination and right to the presence of an attorney. See Miranda, 384 U.S. at 479. "Custodial interrogation" can be defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. If a suspect requests an attorney during custodial interrogation, the interrogation must cease until an attorney is present or the suspect himself reinitiates conversation. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). In this situation, any subsequent statements made by the suspect as a result of a police-initiated, custodial interrogation must be suppressed. Id. at 482. However, absent such interrogation, there is no infringement of the Fifth amendment right to an attorney and no occasion to determine whether or not there has been a valid waiver. See id. at 486.

To properly invoke the Fifth Amendment right to an attorney, a suspect must sufficiently and unambiguously articulate his or her desire to have an attorney present so that a reasonable police officer under the circumstances would understand the suspect's statement as a request for an attorney. See Davis v. United States, 512 U.S. 452, 459 (1994); State v. Huddleston, 924 S.W.2d 666, 669-70 (Tenn. 1996). If the suspect fails to make such an unambiguous request for an attorney, police may continue with interrogation. Id. at 670. A suspect may waive his constitutional rights against compulsory self incrimination and right to an attorney if such a waiver is "voluntarily, knowingly, and intelligently" made. Miranda, 384 U.S. at 444. In determining whether the accused suspect has validly waived his *Miranda* rights, courts must look to the totality of the circumstances. State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992).

Although not altogether clear, the evidence in the record indicates that the petitioner was initially questioned in Jackson (Madison County) by investigators from the TBI; whereupon, he asked for an attorney. The petitioner was released, but he was arrested a couple days later by the Gibson County Sheriff's Department and placed in the county jail. Apparently, the petitioner was arrested in Gibson County because police uncovered evidence that the petitioner had stolen then sold the deceased victim's truck. The petitioner was subsequently transported to the Carroll County jail.

At the Carroll County jail, the petitioner was read his *Miranda* rights and waived those rights before confessing to murdering the victim.

Again, looking at this issue within the context of ineffective assistance counsel, the record reflects that the petitioner received *Miranda* warnings and formally waived his *Miranda* rights in writing before confessing to murder. Although some evidence in the record indicates that the petitioner requested an attorney when questioned by a TBI agent, this Court is unaware of any evidence indicating whether the petitioner invoked his right to an attorney during a custodial interrogation by the TBI agent. In addition, the record reflects that the petitioner failed to tell Counsel that he had requested an attorney and that the petitioner told Counsel that he committed the murder. The record also reflects that Counsel discussed with the petitioner, the confession and waiver of rights form signed by the petitioner. At the time, the petitioner did not raise any issues regarding the constitutionality of his confession with Counsel. Based on his conversations with the petitioner, Counsel acted within the ambit of his professional judgment and did not file a motion to suppress. Upon review of the evidence presented before this Court, we conclude that the evidence does not preponderate against the post-conviction court's findings that the petitioner received the effective assistance of counsel. Accordingly, the petitioner is not entitled to relief.

### III. Conclusion

The judgment of the post-conviction court is affirmed.

_____
J.C. McLIN, JUDGE