IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2009

**TONY JAMERSON v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26216     W. Fred Axley, Judge**

---

**No. W2007-01451-CCA-R3-PC  - Filed June 8, 2009**

---

The petitioner, Tony Jamerson, appeals the judgment of the Shelby County Criminal Court denying post-conviction relief.  The petitioner was convicted of first degree premeditated murder and sentenced to life imprisonment without the possibility of parole.  On appeal, the petitioner argues that: (1) his trial counsel was ineffective in failing to fully investigate police techniques used in obtaining the petitioner's confession, and (2) the trial court and counsel failed to ensure proper jury instruction.  The petitioner also asserts in brief that he is entitled to relief based on cumulative error.  After review, the judgment of the court denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Paul K. Guibao, Memphis, Tennessee, for the appellant, Tony Jamerson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alexia Fulgham, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

In 1999, the petitioner was convicted of first degree premeditated murder and sentenced to life imprisonment without the possibility of parole.  On appeal, this court affirmed the petitioner's conviction and sentence.  *State v. Tony Jamerson*, No. W1999-00935-CCA-R3-CD, 2000 WL 1224764 (Tenn. Crim. App., at Jackson, Aug. 28, 2000), *perm. app. denied* (Tenn. Mar. 12, 2001).  The following is a recitation of the convicting evidence set forth in this court's opinion on direct appeal:

In the light most favorable to the state, the evidence at trial demonstrated that Tony Jamerson was living as a roomer with the victim, Ernest Goodwin. On the afternoon and evening of January 7, 1998, Jamerson drank beer and smoked crack cocaine. Around 9:00 p.m., Jamerson called his aunt and asked her for $20.00 for his granddaughter's daycare. The aunt told him she did not have cash but would write him a check. Jamerson inquired where he might cash a check, and he never went to the aunt's house to get the check.

Jamerson arrived at the home he shared with the victim at about 10:45 p.m. He talked with the victim and asked her to loan him $20.00. The victim told him she did not have $20.00. Jamerson thought the victim was lying to him. Around 11:00 to 11:30 p.m., Jamerson again called his aunt's house to inquire about a $20.00 loan. This time he spoke with his uncle, who told him he did not have $20.00 in cash. The defendant inquired where he might cash a check at that hour, and his uncle told him he did not know.

Sometime before about midnight, the victim retired to her bedroom. Jamerson went to the kitchen and retrieved a bottle of wine. He then went into the victim's bedroom. The victim was resting on her bed. Jamerson struck her at least five times on the head with the bottle of wine.

After inflicting the blows, Jamerson washed his hands and the bottle of wine. He changed his clothes, putting his soiled clothing and the bottle of wine into a garbage bag. He moved the victim's body to a closet and covered it with sofa pillows. He retrieved the victim's keys and pulled her car to a convenient location. He took a bank containing change from the victim's room and loaded a 30-inch television set, a vacuum cleaner, and a telephone into the car.

Jamerson drove away and disposed of the garbage bag containing his clothing and the murder weapon. He then traded the television, vacuum cleaner and telephone for ten $15.00 rocks of crack cocaine. He used the cocaine. After staying with the victim's car until it ran out of gas, Jamerson eventually wound up at his cousin's house, where he was apprehended in the early evening hours of January 9.

On January 8, the morning following the murder of the victim, she did not show up for work at 5:00 a.m., and her granddaughter was unable to reach her by telephone at 6:00 a.m. The victim's employer and his wife, the victim's granddaughter and the police went to the victim's apartment later in the morning of January 8 and discovered the victim's body in the closet. The victim's granddaughter observed that the victim's identification and other belongings were strewn about the apartment. According to this witness, her grandmother always wore a small pouch around her neck which contained her identification and money.

Jamerson was detained overnight and questioned the following afternoon by two detectives, Sergeants James Fitzpatrick and A.J. Christian. In pre-trial proceedings,

Jamerson challenged the admissibility of the statement he gave the officers, claiming the statement had not been voluntarily given. In part, the defendant claimed he had been promised a reduced charge of second degree murder in exchange for a confession and that the state had reneged on the deal after he gave his statement. The trial court discredited the defendant's evidence and denied the motion to suppress.

*Id*. at *1-2.

The petitioner timely filed a pro se petition for post-conviction relief. Thereafter, post-conviction counsel was appointed, the petition was amended, and an evidentiary hearing was held. At the hearing, the petitioner testified, in pertinent part, that he was arrested on January 9, 1998, and he was detained for three days by the Memphis police without charge as part of a technique known as "on the hook." The petitioner stated that he learned of this technique in a newspaper story wherein the technique was thought to be illegal because the police were holding suspects beyond the 48-hour limit without a finding of probable cause. The petitioner asserted that he brought the story to the attention of counsel prior to the filing of the motion to suppress. The petitioner said that prior to the hearing on the motion to suppress, he had only met with counsel three or four times. The petitioner recalled that he was detained on a Friday and charged on Monday. The petitioner admitted, however, that he was only in custody for 24 hours prior to giving his confession. The petitioner claimed that counsel did not mention the "on the hook" technique at the suppression hearing.

With regard to jury instruction, the petitioner admitted that counsel requested that lesser-included offenses be charged but the trial court only charged second degree murder. The petitioner complained that counsel did not object to the court's failure to include additional lesser-included offenses. The petitioner also complained that counsel did not investigate whether first and second degree murder were result-of-conduct offenses. The petitioner acknowledged that he killed the victim but said he did so under the influence of alcohol and drugs. He further asserted that he was under the influence of alcohol and drugs when he gave his confession.

On cross-examination, the petitioner stated that counsel reviewed the information in the newspaper article but did not raise the "on the hook" issue at the suppression hearing. The petitioner asserted that because his confession was not suppressed, the defense strategy was limited to arguing that the petitioner did not have the requisite mental state to commit premeditated murder. The petitioner acknowledged that counsel argued to the jury that the petitioner should only be convicted of second degree murder. The petitioner submitted that counsel requested instructions on reckless homicide and criminally negligent homicide but the court did not grant the request.

The petitioner's trial counsel testified that he was assigned to the petitioner's case after the state dropped its demand for the death penalty. Counsel recalled that he met with the petitioner in jail four times, averaging two hours per visit. He also met with the petitioner a number of times prior to and during court dates. Counsel stated that he researched the information regarding the "on the hook" issue prior to the suppression hearing. However, he determined that argument on this issue was not the strongest argument because the petitioner gave his statement within 24 hours of being detained by police. Counsel noted that he made this determination based on the decision of

*State v. Huddleston*, 924 S.W.2d 666, 675 (Tenn. 1996), wherein the Tennessee Supreme Court noted in its analysis of whether a Fourth Amendment violation occurred that "[o]bviously, if the statement was given prior to the time the detention ripened into a constitutional violation, it is not the product of the illegality and should not be suppressed." Counsel recalled that he discussed the *Huddleson* case with the petitioner, and they tried to suppress the statement on a variety of other grounds, including the voluntariness of the confession. Counsel also noted that the time frame between the petitioner's arrest and arraignment was brought to light at the suppression hearing, but the court found the temporal proximity between the arrest and confession to be "okay." Counsel recalled that after the court denied the suppression motion, the petitioner agreed that the best strategy was to use the confession to support an intoxication defense.

Counsel testified that he requested a lesser-included offense instruction on second degree murder, reckless homicide, and criminally negligent homicide, but the trial court only charged second degree murder. Counsel recalled that he raised the jury instruction issue in the motion for a new trial.

By order entered May 24, 2007, the post-conviction court denied relief, finding that the petitioner failed to prove his factual allegations by clear and convincing evidence and failed to demonstrate he received the ineffective assistance of counsel.

## ANALYSIS

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *Nichols v. State*, 90 S.W.3d 576, 586 (Tenn. 2002). "When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve." *Id.*; *see also Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Appellate review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols*, 90 S.W.3d at 587. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the

-4-

petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Id*. at 697. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id*.

## I.

On appeal, the petitioner first contends that counsel was deficient in failing to pursue the "on the hook" issue at the suppression hearing because the petitioner was held in custody longer than 48 hours without being charged which constituted a violation of the Fourth Amendment. Addressing the petitioner's complaint, the post-conviction court noted:

> [Counsel] testified that he did not neglect the claim because the original motion to suppress was filed . . . which included the Petitioner's claim of the Fourth Amendment violation. [Counsel] further testified that although he felt that it was not a viable claim, he still raised the issue because Petitioner wanted him to pursue it. Finally, [counsel] testified that based on his research there was no constitutional violation in regards to the detention of Petitioner. [Counsel's] research revealed that a constitutional violation occurs anywhere after an arrestee has been detained for at least 48 hours before he confesses. In this case, Petitioner confessed within 24 hours of being detained. The judge ruled that the time frame was in fact reasonable and that Petitioner was allowed to go to the bathroom and have food at that time. [Counsel] appropriately researched the issue and argued it before the judge. The judge denied it.

> Petitioner has failed to demonstrate the particular acts or omissions by counsel that amount to ineffective assistance of counsel, thus failing to meet the first prong of the *Strickland* test.

The record does not preponderate against the post-conviction court's findings. The record clearly demonstrates that counsel researched the "on the hook" issue and determined that argument on this issue was not the strongest argument because the petitioner gave his statement prior to the time the detention ripened into a Fourth Amendment violation. Accordingly, counsel attempted to suppress the statement on a variety of other constitutional grounds. To reiterate, deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Like the post-conviction court, we conclude that the petitioner failed to establish that counsel's conduct fell below an objective standard of reasonableness for criminal attorneys. Therefore, the petitioner is not entitled to relief on this issue.

## II.

The petitioner next complains that both the trial court and trial counsel failed to ensure proper jury instructions. Citing *State v. Page*, 81 S.W.3d 781 (Tenn. Crim. App. 2002), the petitioner first

submits that the trial court failed to properly instruct the jury that second degree murder was a result-of-conduct offense.

Upon review, we initially note that petitioner has waived this issue for failing to raise it on direct appeal as required by the Post Conviction Procedure Act. *See* Tenn. Code Ann. § 40-30-106(g). Further, the plain error doctrine has no application in post-conviction proceedings. *State v. West*, 19 S.W.3d 753, 756-57 (Tenn. 2000). We would also point out that the petitioner did not put on proof that his trial counsel was deficient in raising the issue on direct appeal. Indeed, *State v. Page* was decided two years after the petitioner's trial and direct appeal. As such, counsel cannot be held ineffective for failing to anticipate the holding in *Page* with regard to jury instruction on the *mens rea* of "knowingly." Finally, we note that the jury's first degree murder verdict renders this claim moot. *See, e.g., Rickey Williams v. State*, No. W2006-00605-CCA-R3-PC, 2007 WL 2120174, at *8 (Tenn. Crim. App., at Jackson, July 24, 2007). The petitioner is not entitled to relief.

The petitioner next submits that both the trial court and counsel failed to ensure proper jury instruction on the lesser-included offenses, in particular, the offenses of reckless homicide and criminally negligent homicide. With regard to the petitioner's complaint involving the trial court's duty to instruct the jury on lesser-included offenses, we conclude that the issue is waived as the issue was not raised on direct appeal. Tenn. Code Ann. § 40-30-106(g).

With regard to the petitioner's complaint involving trial counsel, we note that at the time of the petitioner's trial in 1999, it was the "the duty of all judges . . . to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Tenn. Code Ann. § 40-18-110(a)(1979); *see also State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006) (comparing the prior version of section 40-18-110 with the current version effective in 2002). Because the trial court had a mandatory duty to instruct the jury regardless of a request to do so, this court has held that trial counsel was not ineffective for failing to request an instruction on a particular lesser-included offense. *See, e.g., Larry Johnson v. State*, No. W2006-00345-CCA-R3-PC, 2007 WL 2120184 (Tenn. Crim. App., at Jackson, July 24, 2007), *perm. app. denied* (Tenn. Dec. 26, 2007); *Jerome Sawyer v. State*, No. W2005-01813-CCA-R3-PC, 2007 WL 778828 (Tenn. Crim. App., at Jackson, Mar. 15, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007); *Chivous Robinson v. State*, No. E2005-01036-CCA-R3-PC, 2006 WL 1381511 (Tenn. Crim. App., at Knoxville, May, 19, 2006), *perm. app. denied* (Tenn. Oct. 2, 2006); *Jeffery Lee Miller v. State*, No. M2003-02841-CCA-R3-PC, 2005 WL 901130 (Tenn. Crim. App., at Nashville, Apr. 19, 2005), *perm. app. denied* (Tenn. Oct. 17, 2005). Also, contrary to the petitioner's claim, the record in this case indicates that trial counsel requested lesser-included offenses but the request was denied by the court.

Moreover, to obtain relief on the basis of ineffective assistance of counsel, the petitioner must also demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. As noted by this court on direct appeal:

> Jamerson was laboring under a drug addiction and had used crack cocaine and alcohol on the day of the crime. He made two telephone calls to relatives in unsuccessful attempts to borrow money. These calls were made around 9:00 p.m.

and 11:00 to 11:30 p.m. Around 10:45 p.m., the defendant arrived at the home where he lived as a roomer with the victim and asked her for some money. The victim responded that she had no money, and the defendant thought she was lying. After the victim retired to her bedroom for the evening, the defendant procured a weapon by going into the kitchen and retrieving a bottle of wine. Jamerson went into the victim's bedroom around midnight and repeatedly struck the unarmed victim in the head with the bottle of wine as she lay resting in her bed. He had time during the interval between his request for money from the victim and the crime to premeditate the murder. Although the defendant claims that he was high on crack cocaine when he committed the crime and that he panicked and fled the apartment, the undisputed evidence is that he had the presence of mind to change his clothes, wash the victim's blood off his hands and the bottle of wine with which he struck the fatal blows, move the victim's body to a closet and cover it with pillows, take a bank containing the victim's spare change and several large household items with him when he left the apartment, and dispose of the wine bottle and his clothing in another location. There is also evidence that he went through the money pouch the victim kept on her person, scattering its contents throughout the apartment. By his own admission, he killed the victim around midnight and did not depart the victim's home until an hour to an hour and a half later.

*Jamerson*, No. W1999-00935-CCA-R3-CD, 2000 WL 1224764, at *3. Based on this evidence, the jury found the petitioner guilty of first degree premeditated murder despite being instructed on second degree murder. "Failure to instruct is not error where the record clearly shows that the defendant was guilty of the greater offense and the record is devoid of any evidence permitting an inference of guilt of the lesser offense." *State v. Langford*, 994 S.W.2d 126, 128 (Tenn. 1999); *see also State v. Williams*, 977 S.W.2d 101, 106-08 (Tenn. 1998) (noting that jury's verdict of guilt on greater offense of first degree murder and disinclination to consider the lesser-included offense of second degree murder demonstrated that it would not have returned a verdict on other lesser-included offenses). Consequently, the petitioner has not demonstrated that (1) counsel's conduct fell outside the wide range of reasonable professional conduct for attorneys at the time of trial and appeal; or (2) a reasonable probability that the outcome of the proceedings would have been different had the jury been instructed on reckless homicide and criminally negligent homicide. The petitioner is not entitled to relief on this issue.

## III.

The petitioner also contends that the post-conviction court failed to address all claims raised in the petitioner's post-conviction petition. It is not clear which claims the petitioner submits the court failed to address. As to the aforementioned claims argued in brief, the record was sufficient for meaningful appellate review. *See State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). In all other respects, the petitioner has waived appellate review by his failure to present and prove the factual allegations underlying these claims by clear and convincing evidence at the evidentiary hearing, and by not providing argument, citation to authority, and references to the record in support of his claims. Tenn. Ct. Crim. App. R. 10(b). Finally, the petitioner contends that

the cumulative effect of the errors entitles him to post-conviction relief. Based on the foregoing review, we respectfully disagree.

## CONCLUSION

Based on the aforementioned reasoning and authorities, we conclude that the petitioner failed to prove his factual allegations by clear and convincing evidence and failed to demonstrate that he received the ineffective assistance of counsel. Therefore, we affirm the denial of post-conviction relief.

_____
J.C. McLIN, JUDGE